Je Yon Jung, Esq. (SBN #329774)
jeyon@mayjung.com
Jessica H. Meeder, Esq. (*pro hac vice* forthcoming)
jessica@mayjung.com
**MAY JUNG LLP**
333 City Blvd. West
Suite 327
Orange, CA 92868
Tel: (818) 869-6476
Fax: (202) 618-8282

Benjamin L. Crump (*pro hac vice* forthcoming)
ben@bencrump.com
**BEN CRUMP LAW, PLLC**
122 S Calhoun St.
Tallahassee, FL 32301
Tel: 800-683-5111
Fax: 800-770-3444

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.L., a minor, by and through his parent and guardian, WILLIAM LOZANO, individually and on behalf of all others similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| vs. | |
| ORANGE UNIFIED SCHOOL DISTRICT, BY AND THROUGH ERNEST "ERNIE" GONZALEZ, ACTING SUPERINTENDENT; CRAIG ABERCROMBIE, ACTING ASSISTANT SUPERINTENDENT; GREG SMITH, FORMER ASSISTANT | **42 U.S.C. §1983-FOURTEENTH AMENDMENT, EQUAL PROTECTION, DUE PROCESS; FOURTH AMENDMENT, UNLAWFUL SEIZURE; FIRST AMENDMENT, FREEDOM OF SPEECH, RIGHT TO PETITION/ RETALIATION; *MONELL*;** |

PRINCIPAL; NORA ALVAREZ, ASSISTANT PRINCIPAL; HERIBERTO ANGEL, OUSD EXECUTIVE DIRECTOR; DAVID RIVERA, DEPUTY SUPERINTENDENT; DOEs 1-3, MEMBERS OF THE OUSD STUDENT SUCCESS PANEL; and DOEs 4-50, INCLUSIVE.

Defendants.

***CANTON & LAREZ*; 20 U.S.C. § 1681, TITLE IX; 42 U.S.C. § 1985 CONSPIRACY; CAL. CONST., PRIVACY; CAL. CIV. CODE § 52.1, BANE ACT; FALSE IMPRISON-MENT; CAL. ED. CODE § 220; NEGLIGENCE; NEGLIGENT HIRING, SUPERVISION, TRAINING; CA. GOV. CODE §6259, PUBLIC RECORDS ACT; DEFAMATION; and CA. PEN. CODE §637.2, NON-CONSENSUAL TAPING**

**DEMAND FOR JURY TRIAL**

Plaintiff T.L., a minor, by and through his parent and guardian, William Lozano, individually and on behalf of all others similarly situated, brings this complaint for damages based upon federal civil rights, state constitutional rights, and state statutory and common law violations committed by the Defendant Orange Unified School District ("OUSD") by and through its respective officials, employees, and/or agents; Defendants Ernest Gonzalez, OUSD Superintendent; Craig Abercrombie, former Canyon High School ("CHS") Principal and OUSD Interim Assistant Superintendent and current OUSD Assistant Superintendent; Greg Smith, former CHS Assistant Principal; Nora Alvarez, CHS Assistant Principal; Heriberto Angel, OUSD Executive Director; David Rivera, OUSD

Deputy Superintendent; Members of the Student Success Panel ("SSP"), DOEs 1-3; (collectively, "OUSD Defendants"); and DOEs 4-50 inclusive.

## I. __INTRODUCTION__

On December 14, 2022, two days before the last day of T.L.'s first semester of high school, DEFENDANT GREG SMITH summoned T.L. to the vice principal's office. For over two hours, T.L. was interrogated by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ about all of his interactions with his female peers—all of whom were his friends and including females he dated—over the course of the previous four months during the first semester of his freshman year of high school. DEFENDANTS' interrogation required T.L. to recount all of his normal interactions with his fourteen-year-old female peers, including any and all "touches on the arm." He was not allowed to leave. He was not allowed to call his parents. He was never provided a single piece of evidence, statement, or information regarding any allegations against him. And he was never even told that his interrogation related to allegations of sexual harassment or willful force violations of the California Education Code, the latter of which was subsequently dismissed.

Ultimately, DEFENDANTS accused and charged T.L., a fourteen-year-old boy, of sexual harassment: a very serious allegation to impose on a child's interactions with his peers—his equals. Although disregarded and ignored by the

DEFENDANTS, under California Education Code § 212.5, sexual harassment, at a minimum, requires severe or pervasive conduct or the creation of an intimidating, hostile, or offensive educational environment. DEFENDANTS not only failed to come close to meeting these Code requirements, they never even tried. DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ had a singular mission to charge a fourteen-year-old boy with deviant sexual misconduct and harassment for having the audacity to ask permission for a kiss from his fourteen-year-old female peers and having the decency to never force any physical contact after he was declined. Despite DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ's dogged attempts to fabricate and assign deviant sex schemes to a fourteen-year-old boy, not a single fourteen-year-old girl claimed that fourteen-year-old T.L. physically forced a kiss or any sexual contact from any of them.

After imposing a 4-day suspension that would effectively remove T.L. from school and all school-related activities (including his starting position on a varsity high school sports team) for *27 days*, DEFENDANTS subsequently informed T.L. that more discipline was coming.  T.L. was then involuntarily foisted into a secret disciplinary process, euphemistically phrased as the "Student Success Panel" (or "SSP").  He and his family quickly realized that there was not a single explanatory piece of information regarding the SSP—not on his school's

website, not on the OUSD website, and not on the California Department of Education website. In fact, there are no established criteria for distinguishing a child who proceeds to the SSP gauntlet and those who do not. It was simply "determined" by "the school site" that "the nature" of T.L.'s offense "is beyond that of a standard suspension." Nor was there any documentation that explained, set forth the processes for, or otherwise described the purported SSP "appeals process."

T.L. and his family were wholly in the dark, while his education, reputation, permanent school record, and entire social world were on the line. Not only did DEFENDANTS trample on T.L.'s numerous protected federal and state rights, they did so with deliberate indifference to the mental and emotional well-being of T.L., as well as all of T.L.'s female peers who were also subjected to compelled interrogations and stripped of free-will. T.L.'s maturation process, behavioral regulation, and trust have been irrevocably and negatively impacted by the DEFENDANTS' actions. What should have been the beginning of a memorable phase of a child's high school career was marred by the overzealous DEFENDANTS in search of a false "me too" moment.

Unfortunately, T.L. is not alone. OUSD imposes its grossly defective, unlawful, and unconstitutional disciplinary system, including the SSP "process," against students of color at *double and triple the rates* of their white counterparts.

The likelihood that this difference is due to anything *other* than race is at least *1 in 70 million*. Just by virtue of being a student of color, T.L. was at least 2-3 times more likely than his white schoolmates to be subjected to these violative methods—a statistic that was unfortunately borne out here.

T.L. thus also brings claims on behalf of other students of color who are or have been subject to OUSD's unlawful, discriminatory, and unconstitutional disciplinary process, including its surreptitious SSP "process." Like T.L., OUSD's conduct has violated these students' constitutionally-guaranteed civil rights and state law and has caused them to sustain immeasurable damage and injury at a highly sensitive time of their lives.

DEFENDANTS' egregious disciplinary procedural and substantive violations represent the worst examples of abuse of power by so-called educators and administrators, and they must be held accountable.

## II.    JURISDICTION

1.      Plaintiffs bring this case pursuant to 42 U.S.C. §§ 1983, 1988 and California's Constitution and state law. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343 (1-4). Supplemental jurisdiction exists over the state claims and Defendants pursuant to 28 U.S.C. §1367.

2.      Plaintiffs have fully satisfied the Tort Claims Act as to California state law claims made herein.

CLASS ACTION COMPLAINT FOR DAMAGES

### III.    VENUE

3.    The claims alleged herein arose from events or omissions that occurred in the County of Orange. Therefore, venue lies in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).

### IV.    PARTIES

#### *Plaintiff*

4.    At all times material to the Complaint, Plaintiff T.L. was a fourteen-year-old male and is a resident and private citizen of the State California, United States of America.

5.    William Lozano is the natural father of T.L., a minor, and is a resident and private citizen of the State of California, United States of America.

#### *Defendants*

6.    Plaintiffs are informed, believe, and thereupon allege that Defendant ORANGE UNIFIED SCHOOL DISTRICT ("OUSD") is and at all times mentioned was, a public school district organized and existing under the laws of California and situated in Orange County, California.

7.    OUSD is or was the employer of individually named Defendants including, but not limited to, those who are sued in their individual and official capacities, as well as one, or all, of DEFENDANT DOEs 1 through 3.

8.      Defendant ERNEST GONZALEZ is the current SUPERINTENDENT of OUSD and is a policy maker and/or supervisor acting under color of law within the course and scope of his employment and is sued herein in his official capacity. Plaintiff is informed and believes and thereon alleges that this Defendant is a resident of Orange County.

9.      Defendant CRAIG ABERCROMBIE was the Principal of CANYON HIGH SCHOOL, and Plaintiff is informed and believes and thereon alleges that on or about December 5, 2022, after the OUSD Superintendent and Assistant Superintendent were unlawfully fired from their positions by the OUSD School Board, DEFENDANT CRAIG ABERCROMBIE was appointed as Interim Superintendent of OUSD.  Plaintiff is informed and believes that sometime in February 2023, DEFENDANT CRAIG ABERCROMBIE was appointed Acting Assistant Superintendent. At all times material to the initial disciplinary process against T.L., including referral to the SSP, DEENDANT CRAIG ABERCROMBIE was the principal of CANYON HIGH SCHOOL, and at all times material to the SSP and subsequent appeals, DEFENDANT CRAIG ABERCROMBIE was the Interim Superintendent and/or Acting Assistant Superintendent of OUSD, and was a policy maker and/or supervisor and acting under color of law within the course and scope of his employment, and is sued

herein in his individual and official capacities. Plaintiff is informed and believes and thereon alleges that this Defendant is a resident of Orange County.

10.     Defendant GREG SMITH is and was at all times mentioned in this Complaint Assistant Principal of CANYON HIGH SCHOOL, is and was a policy maker and/or supervisor and acting under color of law within the course and scope of his employment, and is sued in his individual and official capacities. Upon information and belief, Defendant GREG SMITH is no longer an Assistant Principal but has an unknown position with OUSD. Plaintiff is informed and believes and thereon alleges that this Defendant is a resident of Orange County.

11.     Defendant NORA ALVAREZ is and was at all times mentioned in this Complaint Assistant Principal of CANYON HIGH SCHOOL, is and was a policy maker and/or supervisor and acting under color of law within the course and scope of her employment, and is sued in her individual and official capacities. Plaintiff is informed and believes and thereon alleges that this Defendant is a resident of Orange County.

12.     Defendant HERIBERTO ANGEL is and was at all times mentioned in this Complaint EXECUTIVE DIRECTOR of OUSD, is and was a policy maker and/or supervisor and acting under color of law within the course and scope of his employment, and is sued in his individual and official capacities. Plaintiff is

informed and believes and thereon alleges that this Defendant is a resident of

Orange County.

13.    Defendant DAVID RIVERA is and was at all times mentioned in this

Complaint Deputy Superintendent of OUSD, is and was a policy maker and/or

supervisor and acting under color of law within the course and scope of his

employment, and is sued in his individual and official capacities. Plaintiff is

informed and believes and thereon alleges that this Defendant is a resident of

Orange County.

14.    The identities and names of the Student Success Panel ("SSP")

Members 1-3 are presently unknown to Plaintiff. Each of the SSP Members is and

was a policy maker and/or supervisor and acting under color of law within the

course and scope of their employment and is sued in his or her individual and

official capacities. Plaintiff therefore sues such persons using "DOEs" or "DOE

DEFENDANTS" for SSP Members, DOEs 1-3, as fictitiously-named defendants.

Plaintiff is informed, believes, and thereupon alleges that there is likely to be

evidentiary support to prove that each DOE Defendant 1-3 was involved in some

manner and legally responsible for the acts, omissions, and/or breaches of duty

alleged below. Plaintiff will amend the Complaint to name the DOE Defendants 1-

3 upon learning their true identities and roles in the actions complained of herein.

15.     The identities and names of the female minors and/or their parents who made false oral and written statements are presently unknown to Plaintiff. Plaintiff therefore sues such persons using "DOEs" or DOEs 4-50, as fictitiously-named defendants. Plaintiff is informed, believes, and thereupon alleges that there is likely to be evidentiary support to prove that each DOE Defendant 4-50 was involved in some manner and legally responsible for one or more of the acts and/or omissions alleged below. Plaintiff will amend the Complaint to name the DOE Defendants 4-50 upon learning their true identities and roles in the actions complained of herein.

16.     All of the facts, acts, omissions, events, and circumstances herein mentioned and described took place in the County of Orange, State of California, and each Defendant is a resident of the County of Orange, State of California, and/or have their principal place of business in said County and State, and/or doing business in said County and State.

17.     Plaintiff is informed, believes, and thereupon alleges that Defendants employed by Defendant OUSD were, at all times relevant and material to this Complaint, acting within the course and scope of their employment duties for Defendant OUSD, and under color of law. Plaintiff is informed, believes, and thereupon alleges that each of the individual Defendant's acts were known to, discovered by, approved by, and/or ratified

by Defendant OUSD, by and through their policy makers, decision makers, officials, officers, and/or supervisors, including named Defendants, and applicable DOE Defendants.

18.    Plaintiff is informed, believes, and thereupon alleges that officials, supervisors, policy makers, and other individuals with the authority to set or modify municipal and/or departmental policy, *de jure* or *de facto,* of Defendant OUSD and/or DOE Defendants 1-3, participated in, approved of, ratified, and/or failed to prevent the acts by all Defendants and DOE Defendants 1 - 3 of which Plaintiffs complain herein.

19.    Plaintiff is informed, believes, and thereupon alleges that at all times herein mentioned, each of the Defendants--including officials, supervisors, and other policy makers from Defendant OUSD and/or DOE Defendants and their agents, was the agent, employee, or co-conspirator of one other, some, or all of their Co-Defendants. Plaintiff is informed, believes, and thereupon alleges that each of the Defendants, acting individually and/or in concert with each other, engaged in a common plan to wrongfully deprive Plaintiff of his respective rights, interests, and liberties, as such rights are afforded under the United States Constitution and the California State Constitution and conspired generally to damage Plaintiff and inflict great injury upon him.

CLASS ACTION COMPLAINT FOR DAMAGES

20.     Defendants are referred to collectively at times herein as "DEFENDANTS."

## V.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

21.     T.L. is and was at all times mentioned in this Complaint, a fourteen (14) year old boy.

22.     T.L. is a Latino Korean boy.

23.     From August 2022-January 2023, T.L. was a freshman at CANYON HIGH SCHOOL.

24.     On or about December 15, 2022, T.L. was summoned by DEFENDANT GREG SMITH to his office at CANYON HIGH SCHOOL.

### A.    T.L.'s Over Two-Hour Interrogation

25.     T.L. was placed in a room with two Vice Principals: DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ.

26.     T.L. was not allowed to leave.

27.     T.L. was not allowed to call his parents.

28.     T.L. was forced to stay in the room with DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ for over two hours of interrogation, threats, intimidation, and coercion.

29.     During the over two-hour interrogation, T.L. did not believe he was free to leave.

30.    Although T.L.'s father was on school campus and a few yards away participating in CANYON HIGH SCHOOL's Varsity soccer practice, during this interrogation, and despite requests to call his father, DEFENDANTS GREG SMITH AND NORA ALVAREZ prohibited T.L. from leaving or calling his parents.

31.    T.L.'s father, William Lozano, was called after the over two-hour interrogation concluded.

32.    During the over two-hour interrogation, T.L. was not provided any details regarding the reason for his interrogation or the allegations against him, let alone any information that he was being disciplined for sexual harassment or willful force against other female minors.

33.    During the over two-hour interrogation, T.L. was not provided any written statements against him.

34.    At no time during the over-two-hour interrogation did DEFENDANT GREG SMITH or DEFENDANT NORA ALVAREZ provide T.L. any information regarding any specific violations of sexual harassment against him, nor did they ever use the phrase "sexual harassment."

35.    Instead, during the over two-hour interrogation, T.L. was required by DEFENDANTS GREG SMITH and NORA ALVAREZ to recount "any and all"

CLASS ACTION COMPLAINT FOR DAMAGES

14

of his interactions with "any girl" since the beginning of high school, including anytime he "touched" a female on the arm.

36.    Over the course of the over two-hour interrogation, T.L. was never told the names of any accusers, the dates at issue, the locations at issue, the specific allegations against him, or even the phrase "sexual harassment."

37.    Over the course of the over two-hour interrogation, T.L. was intimidated by DEFENDANT GREG SMITH with references to criminal interrogations and police interrogations in an abusive effort to intimidate and scare T.L., but T.L. was never provided the specific violations or allegations related to sexual harassment.

38.    Over the course of the over two-hour interrogation, T.L. was intimidated and asked by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ regarding his "interactions" with all other female freshman students, including females he "dated" or was "talking to"[1] and any and all "physical touches" including touches "on the arm" or "brushes up against" any other females. Importantly, T.L. was required to recount as many such vague

_____

[1] References to "dating" or "talking to" should be taken in the context of fourteen-year-olds who "date" or "talk" to each other. It did not involve "dates" outside of seeing each other at school and as referenced in further detail below did not involve sexual contact other than holding hands, hugging, and a peck on the cheek or lips.

interactions with all Female Students and girlfriends he had ever had in high school, spanning the previous four months and potentially even middle school.

39.    DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ provided no parameters or explanation as to why they were asking for these types of innocent interactions, let alone that they would be used against him as sexual harassment. There was no exclusion, distinction, or parameters regarding typical and/or inadvertent physical brushes and bumps throughout the school day in the hallways, horseplaying, slapping each other on the bottom whether in sports or at school amongst friends, and hugging, holding hands or kissing between friends and teens who are "dating" or "talking."

40.    Over the course of the over two-hour interrogation, DEFENDANT GREG SMITH and DEFENDANT NORA ALAVAREZ told T.L. that this was his "last chance" to prove his "innocence," but no information was provided as to what he was defending himself against, and absolutely nothing was mentioned about sexual harassment or willful force. T.L. was confused and scared.

41.    In an outrageous example of abuse of power and intimidation, over the course of the over two-hour interrogation, DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ asked T.L. if he was being sexually abused at home or whether he had been or was being sexually abused. There was no basis

whatsoever for DEFENDANT GREG SMITH or DEFENDANT NORA ALVAREZ to make these types of inquiries. The only reason for such statements was to lead T.L. to believe that his normal interactions with other fourteen-year-old females was criminal, deviant, and abnormal. T.L., as a fourteen-year-old boy, was confused and made uncomfortable by these statements and questions. T.L. denied any sexual abuse and did not know the purpose of this line of questioning, particularly since he had not been told any information regarding a sexual harassment violation allegation against him.

42.    Over the course of the over two-hour interrogation, DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ asked T.L. if he had a sexual "problem," inferring sexually deviant behavior. T.L., as a fourteen-year-old boy, was confused and made uncomfortable by these statements and questions. T.L. denied any "problems" and did not know the purpose of this line of questioning, particularly since he had not been told any information regarding a sexual harassment violation allegation against him.

43.    Over the course of the over two-hour interrogation, DEFENDANT GREG SMITH left the room multiple times and left DEFENDANT NORA ALVAREZ in the room alone with T.L. During one of these occasions, DEFENDANT NORA ALVAREZ told T.L. that she "hooks up" with her

husband and asked T.L. if he had the same definition of hooking up. T.L., as a fourteen-year-old boy, was confused and made uncomfortable by these statements and questions. T.L. did not understand the comparison that DEFENDANT NORA ALVAREZ was making between her physical sexual activity with her husband and his nonsexual interpersonal interactions with other fourteen-year-old female students.

44.    During the over two-hour interrogation, DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ told T.L. that his texts to various female minors to meet up with him outside of their classes—which they all voluntarily did—was to "get what he wanted." Later, DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ misattributed these words to T.L., when, in fact, they were DEFENDANT GREG SMITH's words. T.L. did not force, physically or otherwise, any female out of her chair, out of the classroom, and into the hallway to meet him.

45.    Because of fear, coercion, confusion, and intimidation, over the course of two-hours, T.L. recounted as many interactions that he could remember that he had with his fourteen-year-old female peers, including females he "was talking to," females he had "dated," females he had consensual kisses that were pecks, and females with whom he had friendships and interpersonal

communications over the entire course of the previous 120 days of his first semester of high school.

46.    Any and all statements written by T.L. after the over two-hour interrogation were written as a result of coercion, intimidation, duress, threats, and false information.

47.    T.L. did not understand the meaning of "under penalty of perjury" when he signed his statements and did so as a result of coercion, intimidation, duress, threats, and false information from and by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ, while being denied the ability to leave or place a call, including to his parents.

### B.    The Female Fourteen-Year-Old Students

48.    On or about December 9, 2022, T.L. texted Female Student A, a fourteen-year-old female freshman at Canyon High School, to meet up with him outside of class. Female Student A had previously voluntarily given T.L. her phone number.

49.    Female Student A voluntarily left class and met up with T.L.; she was not threatened, coerced, or physically forced into doing so. Female Student A makes no allegations to the contrary.

50.    As evidenced by the school's video surveillance recording, Female

Student A and T.L. walked together up the stairs where the STEM Building is located on the west side of campus.

51.    During the interaction at the top of the stairs, which is not depicted in the video surveillance footage, T.L. and Female Student A talked and T.L. asked Female Student A if he could kiss her. Female Student A laughed and asked if she was being set up. She also said that because she and T.L. were friends, they shouldn't kiss. T.L. and Female Student A talked for a few more minutes and T.L. asked again for a kiss. Female Student A declined. These facts are undisputed by Female Student A's written statement.

52.    It is also undisputed that T.L. and Female Student A never kissed, whether by force or consent.

53.    Female Student A admits that at some point during their interaction, *she* placed both of her hands on T.L.'s face and said that they were friends and that they shouldn't make out.

54.    Following this conversation, Female Student A and T.L. can again be seen on video surveillance walking back down the stairs together and T.L. walking Female Student A back to class.

55.    T.L. and Student A's interaction lasted approximately 3 minutes.

56.    T.L. did not physically force or verbally threaten Female Student A to

CLASS ACTION COMPLAINT FOR DAMAGES

walk with him.

57.     T.L. did not physically force or verbally threaten Female Student A to walk up the stairs with him.

58.     As depicted in the video surveillance recording—the only objective piece of evidence regarding their interaction—Female Student A is not visibly distressed before or after they were at the top of the stairwell together. She is not crying.  She is not running away from T.L. In fact, they are seen walking side-by-side together back to class.

59.     Notably, Female Student A's written statement references a conversation and further physical interaction between her and T.L. at the bottom of the stairs. However, the video surveillance recording is not consistent with her statement and claims.

60.     As outlined in further detail below, this video surveillance recording was only shown to T.L.'s parents upon their insistence on January 10, 2023, in DEFENDANT GREG SMITH's office on his computer.

61.     DEFENDANT GREG SMITH claimed surprise regarding T.L. parent's request to see the video because "nobody had ever requested to see any evidence" related to a disciplinary action before.

62.     During the viewing of the video on January 10, 2023, T.L.'s parents

made the comment to DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ that the video does not depict any wrongdoing whatsoever. DEFENDANT GREG SMITH responded that it was a grainy video but did not dispute T.L.'s parents' claims.

63.      Importantly, as outlined in further detail below, the video surveillance recording was never produced to T.L.'s parents, despite repeated applicable public records act requests, and never shown to the SSP Members. However, the video was included as "evidence" against T.L. in DEFENDANT GREG SMITH's written statement to the SSP Members.

64.      On December 9, 2022, after her interaction with T.L., Female Student A told Vanessa Ilejay, a campus security officer, that she had a "weird" interaction with T.L. Ms. Ilejay reported this comment to DEFENDANT GREG SMITH.

65.      Female Student A did not make any other complaints or allegations against T.L. before or after this single incident on or about December 9, 2022.

66.      On Monday, December 12, 2022, according to DEFENDANT GREG SMITH, DEFENDANT CRAIG ABERCROMBIE received an email from Female Student A's mother who stated that Female Student A had an

"uncomfortable interaction" with T.L. on December 9, 2022.[2]

67.     DEFENDANT CRAIG ABERCROMBIE "directed" DEFENDANT GREG SMITH to follow up with Female Student A's parent. According to DEFENDANT GREG SMITH, he "phoned the parent" of Female Student A, who "requested" that DEFENDANT GREG SMITH interview Female Student A "about the uncomfortable interaction" with T.L.

68.     Based upon Female Student A's mother's request and permission to interview her daughter on December 12, 2022, DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ conducted an interview of Female Student A. Notably, neither parents of T.L. nor of any of the other Female Students who were summoned to the principal's office were requested to or gave permission for their children to be interrogated by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ.

69.     Female Student A provided a written statement about her interaction with T.L. on December 9, 2022.

70.     In that written statement, Female Student A never claimed that T.L.

---

[2] Despite repeated requests for this e-mail throughout the disciplinary process, including the appeals, as well as in response to a Public Records Act request, Defendants have refused to produce it at any time and to date Plaintiff has never seen this e-mail from Female Student A's mother.

sexually harassed her.

71.     In that written statement, Female Student A never claimed that T.L. sexually assaulted her.

72.     In that written statement, Female Student A never claimed that T.L. physically forced himself onto her.

73.     In that written statement, Female Student A never claimed that T.L. ever kissed her.

74.     During the over two-hour interrogation, T.L. was not shown or told about Student A's statement or allegation.

75.     At Female Student A's request, DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ summoned other female friends of T.L. to interrogate them about their interpersonal interactions with T.L. However, not a single one of the subsequently interrogated females had ever made an independent complaint or report about T.L.

76.     Upon information and belief, every female summoned to the principal's office was T.L.'s friend, many as far back as elementary and middle school, and including some who had previously "dated" him.

77.     Upon information and belief, every Female Student summoned to the principal's office was compelled by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ to provide written statements regarding any

interaction they had ever had with T.L.

78.     Upon information and belief, every female who was summoned to the principal's office was asked by DEFENDANT GREG SMITH and DEFENDANT NORA SMITH if they knew of any other females that T.L. had interactions with over the course of an undetermined amount of months.

79.     Upon information and belief, after interviewing Female Student A, DEFENDANT GREG SMITH and DEFENDANT NORA SMITH summoned, interrogated, and compelled statements from approximately five or more female minor students.

80.     One Female Student, Female Student C, who was summoned, interrogated, and compelled to provide a statement about her interactions with T.L. provided a statement that referenced the "the beginning of middle school," over two years prior. Evidencing DEFENDANT GREG SMITH and DEFENDANT NORA SMITH's witch hunt, Female Student C's statement recounts interactions where T.L. would tell her she was "pretty" and "flirt" with her.

81.     Female Student C never alleges that T.L. forced her to engage in any physical or sexual contact whatsoever.

82.     Female Student C never alleges that T.L. sexually harassed her.

83.     Female Student C had never made a prior complaint about T.L.

84.     Female Student C was forced to write a statement about her interactions with T.L. by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ.

85.     During the over two-hour interrogation, T.L. was not shown or told about Student C's statement or allegation.

86.     Female Student C's compelled statement also references another female, Student I who denied ever having an uncomfortable experience with T.L. However, the identity of Student I is unknown. T.L. was never provided a statement from this anonymous female, despite multiple requests including a PRA request, nor does T.L. even know if DEFENDANT GREG SMITH and DEFENDANT NORA SMITH sought to interview any females with exculpatory evidence or evidence contrary to their Jeffrey Epstein narrative.

87.     Another Female Student, Student D, who was summoned, interrogated, and compelled to provide a statement about her interactions with T.L. provided a statement that referenced an interaction "a few months ago" with no specified date or location.

88.     Female Student D never alleges that T.L. forced her to engage in any physical or sexual contact whatsoever.

89.     Female Student D never alleges that T.L. sexually harassed her.

90.     Female Student D had never made a prior complaint about T.L.

91.    Female Student D was forced to write a statement about her interactions with T.L. by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ.

92.    During the over two-hour interrogation, T.L. was not shown or told about Student D's statement or allegation.

93.    Upon information and belief, after Female Student D was summoned, interrogated and compelled to provide her statement by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ, she told T.L. that during her interrogation she was peppered with questions about T.L. sexually harassing her or other females. Female Student D reported to T.L. that she told DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ that she did not believe her interactions with T.L. constituted sexual assault or sexual harassment. Female Student D also told T.L. that she felt bad for him because she believed some of the females were lying just to get attention and using T.L. as a target.

94.    Another Female Student, Female Student E, who was summoned, interrogated, and compelled to provide a statement about her interactions with T.L. was another freshman who "dated" T.L. for a few weeks during the semester. While they were in the "talking" stage of their "relationship" she stated that T.L. was affectionate but that she "didn't mind too much."

95.    The statement recounts how Female Student E and T.L. left math

class together and walked around campus when he asked for a kiss, and she declined. The statement also references how they mutually hugged and even consensually kissed goodbye one day.

96.    Female Student E never alleges that T.L. forced her to engage in any physical or sexual contact whatsoever.

97.    Female Student E never alleges that T.L. sexually harassed her.

98.    Female Student E had never made a prior complaint about T.L.

99.    Female Student E was forced to write a statement about her interactions with T.L. by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ.

100.    During the over two-hour interrogation, T.L. was not shown or told about Student E's statement or allegation.

101.    Another Female Student, Female Student F, who was summoned, interrogated, and compelled to provide a statement about her interactions with T.L. provided a statement that referenced their friendship going as far back to 8th grade in middle school.

102.    Student F's statement recounts her friendship with T.L. over the years, including middle school, and instances when they mutually hugged or held hands.

103.    Student F references two occasions when T.L. *asked* if he could kiss

her, to which she declined. Student F never alleges that T.L. ever kissed her.

104.    Female Student F never alleges that T.L. forced her to engage in any physical or sexual contact whatsoever.

105.    Female Student F never alleges that T.L. sexually harassed her.

106.    Female Student F had never made a prior complaint about T.L.

107.    Female Student F was forced to write a statement about her interactions with T.L. by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ.

108.    During the over two-hour interrogation, T.L. was not shown or told about Student F's statement or allegation.

109.    Notably, T.L.'s coerced statement also reported that Female Student F stated that she was high during one of their interactions at school and asked T.L. if he wanted a hit of her vape, which he declined.

110.    One final Female Student, Female Student B, who was summoned, interrogated, and compelled to provide a statement about her interactions with T.L. provided a statement unlike the others. Student B's statement admitted to voluntarily leaving class and walking with T.L. because she was "bored." Notably, her statement references this interaction from "months" ago but that is

later crossed out and "weeks" ago is written above where "months" had first been written. However, there is no other detail as to the date or any other details about the incident.

111.    Female Student B's compelled statement recounts an interaction with T.L. that allegedly happened on campus and involved T.L. touching and grabbing her chest, her backside, and trying to put his hand up her shirt. Notably, the statement appears to have been changed to add in these additional incriminating yet uncorroborated interactions. In fact, these additional forceful interactions appear to have been written with a different pen altogether. Moreover, although this interaction apparently occurred "weeks" or "months" before, there is no associated video surveillance recording, nor did DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ appear to attempt to identify any such video recording.

112.    During the over two-hour interrogation, T.L. was not shown or told about Female Student B's statement or allegation.

113.    Upon information and belief, Female Student B is the girl that Female Student E believed was lying to get attention.

114.    Importantly, in or around February 2023, T.L. received a call from Male Student 1 who told T.L. that Female Student B had consensual sex with

him. However, after their consensual sex, Female Student B made the false allegation that Male Student 1 had raped her. Upon information and belief, a real criminal investigation was conducted by the Anaheim Police Department and Male Student 1 was cleared of any and all charges of sexual assault or rape of Female Student B. Further, upon information and belief, Female Student B was never investigated, disciplined, or charged with false reporting, particularly of such a serious offense involving sexual assault. Upon information and belief, Female Student B has a propensity for making false accusations against unwitting fourteen-year-old boys. At a minimum, a fourteen-year-old female making an accusation of this nature should have been investigated and corroborated with at least the same vigor and demand for justice that DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ used in their over two-hour interrogation of T.L.

115.    As outlined above, Female Student B was high during her single reported interaction with T.L. and asked T.L. if he wanted a hit off of her vape.

116.    Upon information and belief, Female Student B was not disciplined or even investigated for being high and consuming illicit drugs on campus.

117.    T.L. was intentionally treated differently from Student B, who is a white female and there is no discernable reason for the difference in the treatment.

118.   As outlined above, Student B was the only female student to claim that T.L. "touched/grabbed" her chest and her "backside" and "tried to put his hand" up her shirt. After T.L. ultimately learned of these allegations in detail, T.L. vehemently denied ever touching Student B in this way. Student B also could not remember if this single interaction with T.L. was weeks or months ago when she was compelled to write a statement against T.L.  This same student, Student B, in or around February 2023, made additional false allegations against another male fourteen-year-old, Male Student 1-- that Male Student 1 had raped her, when in fact they had consensual sex.

119.   T.L. was intentionally treated differently from Student B, who is a white female and there is no discernable reason for the difference in the treatment.

120.   As outlined above, a few weeks prior to the interrogation of T.L. on December 15, 2022, Student I had previously made false accusations against T.L. about his receipt of nude pictures from Student I. DEFENDANT GREG SMITH conducted an investigation, including interviewing T.L. and other students. He cleared T.L. of any wrongdoing and notified T.L.'s father of same. Student I admitted to making up the accusation.

121.   Upon information and belief, Student I was not disciplined or even investigated for making false statements against T.L.

122.   T.L. was intentionally treated differently from Student I, who is a

white female and there is no discernable reason for the difference in the treatment.

123.    In another example, upon information and belief, Male Student 2, is a white male at Canyon High School. During the school year 2021-2022, Male Student 2 was a freshman and on the varsity basketball team. Male Student 2 was accused of rape/sexual assault, recording a sex act with another female student without her consent, and distributing the video of the sex act to third-parties. The allegations against Male Student B were "handled" by DEFENDANT CRAIG ABERCROMBIE, the principal at Canyon High School, contrary to standard investigation procedures. Male Student 2 was not administratively disciplined, criminally referred, or criminally charged for any of the multiple criminal and education code violations. Male Student 2 was not suspended or sent to SSP for his actions.

124.    T.L. was intentionally treated differently from Male Student 2, who is a white male, and there is no discernable reason for the difference in the treatment.

125.    After T.L. was forced to withdraw from Canyon High School, a DEFENDANT OUSD unidentified Canyon High School counselor violated T.L.'s statutory and constitutional privacy rights by falsely informing other uninvolved students that T.L. was "kicked out" of school because he "tried to

make out" with a student and disclosed other confidential and disciplinary information. To date, T.L. has never received any information about the female students who were forced to provide statements against T.L.

126.    What did DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ ignore in their one-sided blind investigation?

a.   In every single instance where T.L. texted any one of the female students to meet up outside of class, every single one voluntarily left class to meet T.L.

b.   T.L. never threatened any of these females to meet him, talk to him, or kiss him and there is no evidence or statements to that effect.

c.   T.L. never physically forced any of these females to meet him, talk to him, or kiss him and there is no evidence or statements to that effect.

d.   None of the single interactions individually or collectively amounted to the severity required to constitute sexual harassment.

e.   None of the single interactions individually or collectively amounted to the pervasiveness required to constitute sexual harassment.

f.  None of the single interactions individually or collectively amounted to a hostile environment to constitute sexual harassment.

g.  None of the single interactions individually or collectively amounted to a quid pro quo to constitute sexual harassment.

h.  T.L. never had any actual or perceived power or authority over any of the females who were compelled to write statements.

i.  There is no evidence in the record that any of these females' educational performance was negatively impacted by these individual singular interactions.

j.  There is no evidence in the record to support that an objectively reasonable person would find these single interactions individually or collectively to amount to sexual harassment.

127.   In their overzealous pursuit of T.L., DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ failed to provide even a modicum or rudimentary nod to due process. They forgot or did not care that a number of fourteen-year-old children would become collateral damage in their smear campaign against T.L.

128.   During the entire interrogation, all of these compelled statements

from T.L.'s peers were in DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ's possession, but none were ever shown or discussed with T.L.

129.   Exacting a four-day suspension (that was effectively a 27-day suspension) was not enough of a Scarlet A for DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, and DEFENDANT CRAIG ABERCROMBIE.

### C.   Suspension and the Student Success Panel

130.   It was not until after the over two-hour interrogation of T.L. on December 15, 2022, that T.L.'s father, William Lozano, was called to the office and verbally told that T.L. had engaged in "sexual harassment," and that he was going to be suspended from school for four days beginning the next day on December 16, 2022.

131.   T.L. and William Lozano were not provided any documents, any information, nor any details regarding the allegations—just that T.L. was suspended for four days.

132.   Later the afternoon of December 15, 2022, T.L.'s mother, called DEFENDANT GREG SMITH.

133.   T.L.'s mother requested further information and details regarding the

allegations and evidence against T.L. T.L.'s mother also asked for details regarding the appeal process but was told that there was no further information available regarding an appeal.

134.   In fact, instead of providing further information about an appeal of the discipline and findings that had already been imposed, DEFENDANT GREG SMITH verbally informed T.L.'s mother on the telephone that there would be "additional" punishment and discipline to be determined at a future yet-to-be-determined date through a euphemistically phrased "Student Success Panel" or "SSP" hearing.

135.   Having never heard of the SSP, T.L.'s mother inquired about any further information, including written policies and procedures, regarding the SSP or information anywhere on the school district website or elsewhere. DEFENDANT GREG SMITH informed T.L.'s mother that there was no additional information available at that time, public or otherwise, other than that it is an additional hearing for further discipline for some future undetermined date.

136.   On Friday, December 16, 2022, after having googled and searched DEFENDANT OUSD's website, Canyon High School's website, the California Education Code, and any other potential references for further information regarding the SSP to no avail, T.L.'s mother emailed DEFENDANT GREG

SMITH at 7:05 am the following email: "Good morning Mr. Smith Can you please send me any documents/links regarding the policies and procedures for the disciplinary process that we discussed yesterday in regards to my son, [T.L.]? I tried to find them myself and was unable to locate them. Thank you."

137.    On Friday, December 16, 2022—the first day of his four-day suspension, T.L. was required to go to DEFENDANT GREG SMITH's office to take his finals and then leave the campus.

138.    T.L. reported to DEFENDANT GREG SMITH's office on December 16, 2022, to take his finals. On that day, he was provided a single-page letter, a portion of which was erroneously written in Spanish, although T.L. does not speak Spanish.

139.    After he completed his final in DEFENDANT GREG SMITH's office, DEFENDANT GREG SMITH gave T.L. a written suspension letter regarding his four-day suspension and the violations related thereto, which were partially in Spanish. This was at the conclusion of the first day of his "four-day" suspension.

140.    Moreover, the suspension letter's support or explanation for the "incident that caused the suspension" was comprised of a single, inadequate, bootstrapping sentence that stated: "[T.L.] sexually harassed and used force

against female students at Canyon High School during Semester 1 of the
2022/2023 school year."  No further explanation of the evidence related to his
charges.

141.    Further, the suspension letter indicated that his "first day back at
school" would be January 12, 2023. Because of the intervening three-week
Winter Break and the additional three days after students returned to school on
Monday, January 9, 2023, and, thus, T.L. was suspended from school for a total
of 27 days.

142.    Finally, the form stated that the "parent/guardian may request an
appeal hearing before the Superintendent's designee (site principal)." However, it
was the site principal DEFENDANT CRAIG ABERCROMBIE who imposed the
discipline, as well as the subsequent SSP progress.  Thus, the appeal was to the
actual decisionmaker, in violation of all reasonable definitions of an appeal.

143.    The suspension form was a form letter from Canyon High School
Principal, DEFENDANT CRAIG ABERCROMBIE.

144.    The form further required a student signature acknowledgment that
the student had been told why he was suspended and that he had been "given a
chance to ask questions and explain [his] side of the story." T.L. never signed this
statement because the acknowledgement was not true.

145.    Moreover, any potential appeal would be futile as DEFENDANT GREG SMITH had already informed T.L. and his parents that additional unknown and yet-to-be-determined discipline was forthcoming 27 days later.

146.    On December 19, 2022 at 3:38 pm, DEFENDANT GREG SMITH responded to T.L.'s mother's email of December 16, 2022, requesting further information regarding the disciplinary process, appeal, and the SSP.

147.    On December 19, 2022, DEFENDANT GREG SMITH provided a single-page letter via e-mail from DEFENDANT OUSD stating that, *inter alia,* "Your child's school site has determined the nature of your child's offense is beyond that of a standard suspension. Therefore, your child will be referred to a Student Success Panel Hearing." There was no information whatsoever as to how that determination was made or the standards, if any, for making a referral to the SSP in the first place, what the referral was based upon, or what the process would entail.

148.    In addition, the single-page letter stated that "[w]hen determining the best course of action for your child, the [SSP] will have the following considerations: 1) violation of the California Educational Code; 2) discipline and attendance history; 3) grade/current progress (as provided by current teachers); 4) statements from school, students, witnesses, and parents; 5) responses from panel questions; and 6) interventions." *Id.*

149.   Further, the single-page letter at the bottom stated that the "Student Success Panel Appeal Process" is as follows: "First Appeal: Executive Director, Student & Community Services. Second Appeal: Assistant Superintendent, Educational Services." However, no further information was provided with respect to an appeal, and no information was provided about the procedures for the appeal.

150.   Finally, the letter stated that the hearing date would be January 11, 2023 at 10:00 a.m. Notably, this is contrary to the December 16, 2022, suspension letter that stated that T.L.'s first day "back at school will be 1/12/2023."

151.   T.L. was despondent, severely depressed, and fatalistic, if not potentially suicidal, by the sequence of events, the accusations against him, and the prospect of discipline that would expel him from his beloved high school and weighed effectively like the death penalty on his fourteen-year-old mental and emotional health.

152.   In order to avoid an additional three weeks of emotional pain and anxiety over this mysterious process and Draconian punishment, on December 21, 2022, T.L.'s mother again emailed DEFENDANT GREG SMITH and once again requested "any other guidance, other than the one-page letter that you provided to me from Mr. Angel, regarding the policies and procedures related to the 'Panel' process?" In addition, T.L.'s mother stated in the email that they had

searched everywhere online and could not find anything about the SSP. Further, she requested copies "of all the statements/evidence against [T.L.], including videos, audio, written statements, other findings" because [T.L.] and his family "remained in the dark about the specific allegations, complaints, and evidence used against him in the determinations to date."

153.   After receiving an out of office email response from DEFENDANT GREG SMITH, T.L.'s mother forwarded the email request to DEFENDANT CRAIG ABERCROMBIE and DEFENDANT HERIBERTO ANGEL requesting a response. Shortly thereafter, DEFENDANT GREG SMITH called T.L.'s mother. During the telephone conversation, DEFENDANT GREG SMITH informed T.L.'s mother that no further information or policies or procedures were available in writing regarding the SSP.

154.   In short, T.L. was informed of a four-day suspension on December 15, 2022, and then informed four days later on December 19, 2022, that additional post-hoc discipline would be imposed nearly a month later by a mysterious panel called the SSP on January 11, 2023. Thus, an appeal of the discipline of the four-day suspension and violations was futile and premature as additional undetermined discipline was forthcoming.

155.   T.L. was a starting freshman on the Canyon High School Varsity Soccer team. The Canyon High School Varsity Soccer team continued its regular

league games and tournaments during the upcoming December winter break. It was mandatory for all varsity players to continue to attend practices five days a week, and games and tournaments. As a result of the December 15, 2022 suspension, T.L.'s four-day suspension resulted in 27 additional days of suspension from the Canyon High School Varsity soccer team; suspension from 19 Canyon High School Varsity soccer practices; suspension from the Canyon High School Varsity soccer alumni game; suspension from three Canyon High School Varsity soccer games in the NOCI Tournament; and suspension from five Canyon High School Varsity soccer league games.

156.   In December, T.L.'s parents continued to insist on and demand access to the evidence against T.L. They were told that they could come into the office on January 10, 2023--one day before the SSP hearing, to view the evidence against T.L.

157.   On January 10, 2023, T.L.'s parents were shown the approximately three-minute surveillance video of T.L. and Student A walking on campus, However, DEFENDANT GREG SMITH refused to provide T.L.'s parents any of the evidence against T.L., including  statements from any of the female fourteen-year-old students; text messages to or from any of the female fourteen-year-old students; e-mail from Student A's mother; a recording of T.L. and one of the

female fourteen-year-old students;[3] any other recording; and/or any other evidence.

158.  DEFENDANT GREG SMITH admitted that there was no other video surveillance evidence regarding any of the other allegations against T.L. Upon information and belief, no effort was made to identify any additional video surveillance. Further DEFENDANT GREG SMITH refused to provide T.L.'s parents with the video retention policy.

159.  The draft statement from DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ is rife with hearsay, uncorroborated statements, false statements, and statements that T.L. denied occurred.

160.  DEFENDANT GREG SMITH denied T.L.'s mother's request that the SSP hearing be recorded.

161.  DEFENDANT GREG SMITH denied T.L.'s mother's request to present live witnesses on behalf of T.L. Again, none of the underlying facts or statements were ever provided to T.L. and his parents. Thus, T.L. and his parents would have to give their best guess on what statements to present in the SSP

---

[3] DEFENDANT GREG SMITH indicated that he had the recording but refused to provide it to T.L.'s parents because he believed that it was obtained in violation of state law. Thus, DEFENDANT GREG SMITH admitted that that this female student had engaged in criminal code violations, but no criminal or disciplinary action was taken against this student.

hearing.

162.    There is not a single reference to the SSP or its processes in the Canyon High School student handbook.

163.    There is not a single reference to the SSP or its processes in the DEFENDANT OUSD Board policies, including BP 5144.1(a) "Suspension and Expulsion/Due Process."

**D.    The Student Success Panel Hearing**

164.    On January, 11, 2023, T.L. and his parents arrived at DEFENDANT OUSD's offices.

165.    T.L. and his parents observed several other families attending the SSP panel before and after T.L.'s SSP hearing. T.L.'s parents were told that there were approximately 4-5 other SSP hearings that morning. All other individuals participating in an SSP hearing were Latinx and some had translators in attendance.

166.    In addition to T.L. and his parents, the SSP hearing was attended by three panelists (names unknown), who are administrators from other schools within the District; DEFENDANT GREG SMITH; DEFENDANT NORA ALVAREZ; a non-voting school psychologist (name unknown); and non-voting Sheldon Glass, the Coordinator for Student and Community Services.

167.    During the SSP hearing, which lasted approximately 30-45 minutes, DEFENDANT GREG SMITH read his statement to the SSP.

168.    DEFENDANT GREG SMITH's presentation to the SSP panel contained numerous false and misleading hearsay statements that were never corroborated and are and were denied by T.L. He did not offer any other objective tangible evidence.

169.    DEFENDANT GREG SMITH's presentation to the SSP panel included false and coerced "confessions" from T.L. which could not have been a confession as T.L.'s statements were not based on any knowledge of the specific allegations against him.

170.    DEFENDANT GREG SMITH's presentation to the SSP panel referenced and relied upon "evidence" that was never produced to the SSP panel or to the Plaintiff.

171.    DEFENDANT GREG SMITH's presentation to the SSP panel referenced evidence of a security video of T.L. and Female Student A, but he never showed it to the SSP and had it been shown, it would have depicted Female Student A voluntarily meeting up with T.L., the two fourteen-year-old students walking together, walking up a set of stairs together, and after a few minutes, walking down the stairs together and T.L. walking Female Student A back to class.

CLASS ACTION COMPLAINT FOR DAMAGES

172.   DEFENDANT GREG SMITH'S presentation did not have a single reference to "sexual harassment," other than citation to the violation.

173.   DEFENDANT GREG SMITH'S presentation did not have a single reference to "sex," other than to the citation of the violation.

174.   DEFENDANT GREG SMITH'S statement did not have a single reference to "sexual contact."

175.   DEFENDANT GREG SMITH did not present a single live witness and the redacted statements are not only hearsay, every single statement used against T.L. involved a single incident with each girl where there was mutual interest and friendship; the span of the incidents took place over the course of four months if not years; and not a single statement from any of the females corroborates any purported allegations from any other female student.

176.    DEFENDANT GREG SMITH'S presentation did have references to T.L. *requesting or asking* to kiss other female fourteen-year-old students.

177.   However, DEFENDANT GREG SMITH'S presentation does not have a single reference to T.L. actually kissing any of the female fourteen-year-old students, without their consent, because no interaction ever occurred.

178.   DEFENDANT GREG SMITH'S presentation packet to the SSP included an "Evidence" subheading and included "1. video: Canyon High School

security cameras; 2. Screen recording: text messages with STUDENT-A;

3. Screen recording: text messages with STUDENT-C; and 4. Screen recording:

text messages with STUDENT-E." However, none of these pieces of evidence

was ever shown to the SSP and other than the brief viewing of the video to

T.L.'s parents on January 10, 2023, T.L. and his parents were never given access

to any of the other items labeled "evidence."

179.   Upon information and belief, DEFENDANT GREG SMITH falsely

referenced these pieces of "evidence" as corroborative of his findings, but failed

to produce them because they in fact do not support his findings and are

exculpatory. Moreover, DEFENDANT GREG SMITH did not reference in his

statement to the SSP and failed to produce further exculpatory evidence related to

audio recordings of an interaction between Student DOE and T.L., in addition to

the fact that it provides evidence of the recording student's criminal violations of

Ca. Penal Code § 632.

180.   During the hearing, and notwithstanding the lack of a single

guideline, procedure or policy regarding the SSP process, through tears and sobs,

T.L. read a statement to the SSP; then T.L.'s mother read a statement; and then

T.L.'s parents read the following supportive statements from: T.L.'s treating

therapist (who was retained as a result of the deep depression and negative

ideations that occurred as a result of the sexual harassment charges and suspension); T.L.'s Canyon High School Varsity soccer coach; and T.L.'s family friend who is a licensed therapist and has known T.L. and his family for over 35 years. These statements in support of T.L. by adults and mental health professionals were ignored, not considered by the SSP, and given less weight than the compelled and uncorroborated hearsay statements of fourteen-year-old girls, most of whom did not voluntarily make any complaints against T.L. or even provide any statements alleging sexual harassment.

181.   The SSP then went into a secret closed-door session for approximately 30 minutes. T.L. and his parents were escorted to another room and waited for the decision. T.L. and his parents were verbally informed, through Sheldon Glass, that the SSP had voted to impose further discipline on T.L. by expelling him from Canyon High School and placing him at another high school, Villa Park, for a semester.

182.   The SSP did not provide anything in writing regarding or supporting their findings or decision. To date, nothing has been provided by or from the SSP.

183.   Although never provided by the SSP, if all of the "considerations" that should have been taken into consideration, in accordance with the single page document provided to Plaintiff, actually were taken into due consideration they

would have inured in favor of T.L. and not in favor of expulsion or "involuntary placement"[4] at another school: 1) violation of the California Educational Code; 2) discipline and attendance history; 3) grade/current progress (as provided by current teachers); 4) statements from school, students, witnesses, and parents; 5) responses from panel questions; and 6) interventions."

      a. <u>Cal. Ed Violations</u>: Contrary to the DEFENDANT OUSD's own board policy BP 5144(a), "Disciplinary measures that may result in loss of instructional time or cause students to be disengaged from school, such as detention, suspension, and expulsion, shall be imposed only when required by law or when other means of correction have been documented to have failed." (Education Code 48900.5). T.L. was never informed that any of these female peers were made "uncomfortable," let alone sexually harassed. Thus, there were never any other means of correction prior to this "involuntary placement" by the SSP. Moreover, according to OUSD Board policy, the Superintendent's strategies "shall reflect

---

[4] Throughout this process, OUSD and its representatives have referred to T.L.'s expulsion from Canyon High School as "involuntary placement" in an effort to semantically avoid due process requirements for "expulsions." The Defendants use euphemisms, such as "Student Success Panel" and "involuntary placement," to avoid their constitutional obligations.

the Board's preference for the use of positive interventions and alternative disciplinary measures over exclusionary discipline measures as a means of correcting student misbehavior." T.L. was never given any alternative disciplinary measures, warnings, or interventions prior to the SSP's "involuntary placement" and in fact his pending four-day suspension was increased to an SSP for "further discipline" while his four-day suspension was pending. Moreover, as outlined throughout this Complaint, Defendants failed to establish, let alone set forth a factual basis, for sexual harassment in accordance with Ca. Educ. Code § 48900.2 and Section 212.5. Finally and importantly, DEFENDANT HERIBERTO ANGEL dropped the 48900(a)(2) violation after the so-called first appeal, without any explanation or information.

b.  Discipline and Attendance History: T.L. had no prior similar discipline history or complaints from other female students. His disciplinary record comprised of one notation from elementary school for getting out of his seat at lunchtime; one notation from middle school for an altercation with two boys who were throwing a water bottle at him, and he was assigned five lunch detentions; and one note from high school for talking too much in math class

and 3-hour detention. T.L.'s attendance record reflected 1 unexcused absence and 0 tardies.

   c.  <u>Grade/current progress (as provided by current teachers)</u>: For T.L.'s first semester in high school and as of January 2023, T.L.'s grades were As and Bs. Five of T.L.'s teachers provided a current student evaluation with a scale of Excellent, Good, Average, or Poor, and in areas regarding substantive class work, behavior and attitude. From his Sports Medicine teacher, T.L. received 7/8 "Good" ratings and one Average. From his biology teacher, T.L. received 3/8 "Good" ratings, 4/8 "Average" ratings and 1/8 "Poor" rating for test performance/projects; notably, he had a B+ at the time of this rating. From his Spanish II teacher, T.L. received 4/8 "Good" ratings and 4/8 "Average" ratings. From his English teacher, T.L. received 7/8 "Good" ratings and 1/8 "Average" rating. Finally, from his Math teacher, T.L. received 6/8 "Good" ratings and 2/8 "Average" ratings. In short, T.L.'s GPA was above a 3.0 and was a good student academically and behaviorally. He was an honor roll student for all of his prior semesters in middle school.

d.  <u>Statements from school, students, witnesses, and parents</u>: While the DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ presented inaccurate statements and statements based on hearsay and intimidations from fourteen-year-old female students who were required to write statements regarding any and all interactions with and against T.L., including "uncomfy" situations and touches on the arm. T.L. provided a multi-page statement, his parents provided a multi-page statement, T.L.'s varsity coach provided a statement in support of T.L., his treating therapist provided a statement, and another behavioral therapist who has known T.L. for his entire life provided a lengthy letter. Nevertheless, it is unknown what, if anything, the SSP relied upon. The statements from the fourteen-year-old females in all their deficiencies and lack of substantive allegations were given greater and undue weight by the SSP than unimpeachable adults, their own employee, and mental health professionals. Again, DEFENDANT GREG SMITH prohibited T.L. from presenting any live witnesses at the hearing and T.L. was never given any other information regarding the parameters of the SSP hearing.

e.  <u>Responses from panel questions</u>: Again, although its unclear what

the SSP relied upon, if anything, regarding their decision. The SSP

panel's questions were limited and did not involve any questions

about alternatives, his therapy treatment, or other interventions.

    f.   <u>Interventions</u>: None.

184.   In short, *if* there was an SSP policy or procedure that actually required

the SSP to take into consideration the items that were listed in the SSP letter, the

SSP violated such unwritten policy or procedure. The considerations listed—but

ignored--overwhelmingly inured in T.L.'s favor and against expulsion and

"involuntary placement."

**E.   The First "Appeal"[5]**

185.   A few minutes after Mr. Glass verbally informed them of the SSP's

"decision," and T.L.'s parents asked about the appeals process again, Mr. Glass

stated that they could speak to the Executive Director of OUSD, DEFENDANT

HERIBERTO ANGEL.  Within a few minutes of being given verbal notice of the

SSP decision, T.L. and his parents were escorted into DEFENDANT

HERIBERTO ANGEL'S office. T.L. and his parents were surprised that this was

---

[5] Plaintiff does not concede that the actions that took place after the SSP constitute a "first appeal" but it outlines the actions that were taken after the SSP determination. To date, there has been no information provided regarding the appeal process.

the "appeal" process.

186.   With no choice and no guidance on an appeal process, and within minutes of the SSP's "decision" (without any findings or information whatsoever other than their verbal determination to involuntarily place T.L. at another school for a semester) T.L. and his parents repeated their statements that were made to the SSP, reiterating the lack of process and fairness; stating that the violations against T.L. were unsound and unanchored in any credible facts or legal basis; and repleading that the entire disciplinary process was procedurally and substantively defective.

187.   T.L. and his parents were in the dark about the substance of any appeal, let alone the process for appeal, because no substantive information  was provided to T.L. and his parents about the SSP's decision, the basis for their decision, or how the considerations were viewed.

188.   Again, in the absence of any procedural guidance, DEFENDANT HERIBERTO ANGEL indicated that he would review the matter and respond to them later that day or no later than the next morning.

189.   DEFENDANT HERIBERTO ANGEL repeatedly erroneously claimed that T.L. was required to withdraw from Canyon High School "in order" to proceed with ANY appeal. This is contrary to fundamental concepts of

"appeal," as the expulsion and "involuntary transfer" discipline by the SSP was the very decision that was being appealed! Not to be deterred, DEFENDANT HERIBERTO ANGEL insisted on multiple occasions that T.L. would "have to withdraw" from school at Canyon High School pending his appeal. Whether T.L. formally withdrew from Canyon High School or not, it was clear that T.L. would not be allowed to enter the grounds of Canyon High School. Thus, T.L. did not attend school for a total of eleven (11) days of educational instruction.

190.    Having not heard anything on January 11, 2023, on January 12, 2023 at 7:12 a.m. T.L.'s mother emailed DEFENDANT HERIBERTO ANGEL and requested an update stating: "We are eager to hear a response or status update form [sic] the District as yesterday was [T.L.'s] last day of the 4 day suspension."

191.    DEFENDANT HERIBERTO ANGEL responded at 8:11 am and stated that he was still reviewing the matter and would respond "shortly."

192.    A few hours later on January 12, 2023, DEFENDANT HERIBERTO ANGEL called T.L.'s mother and informed her that he was: 1) upholding the SSP's decision  to expel T.L.; but 2) that he was simultaneously withdrawing the "willful force" violation under Ed. Code 48900(a)(2). No written or verbal explanation or findings were ever provided.

193.    DEFENDANT HERIBERTO ANGEL stated during the telephone

call that Female Student A's mother was "involved," and the District was under pressure to act on her behalf.

194.   During this telephone call with DEFENDANT HERIBERTO ANGEL, T.L.'s mother requested further information regarding the second appeal process, particularly since they had not been given any information related to the process. DEFENDANT HERIBERTO ANGEL responded that the District would have to "get back" to her about the next steps and the second appeal. Upon information and belief, there were no policies or procedures in place for the second level of appeal either.

195.   Further, during this telephone call, DEFENDANT HERIBERTO ANGEL again informed T.L. and his parents that T.L. would "have to withdraw" from Canyon High School immediately and attend the other high school to which the SSP expelled him. T.L.'s mother informed DEFENDANT HERIBERTO ANGEL that was procedurally unsound and legally defective because an appeal, by definition, requires the abeyance of any discipline or punishment pending the outcome of the appeal. DEFENDANT HERIBERTO ANGEL erroneously disagreed and claimed that it was not possible for T.L. to continue to be enrolled at Canyon High School, regardless of any appeal process and that he would have to withdraw from Canyon High School.

196.    T.L.'s mother reiterated that the "appeal" process was nonsensical and informed DEFENDANT HERIBERTO ANGEL that she would not be withdrawing T.L. from Canyon High School and that DEFENDANT OUSD was in violation of the state compulsory education requirements—as it was now the end of the 5th day of his original 4-day suspension.

197.    On January 12, 2023, T.L.'s mother sent OUSD a formal Public Acts Request under Govt. Code §§ 6250 et seq.; a Letter of Preservation; and a Letter requesting further details and explanation regarding the disciplinary process, the SSP, the appeal rights, and written findings.

198.    After the close of business on January 12, 2023, at 5:33 pm, DEFENDANT HERIBERTO ANGEL emailed T.L.'s mother and continued to insist that T.L. would need to withdraw from Canyon High School immediately, notwithstanding any appeals.

199.    On Monday January 16, 2023, T.L.'s mother responded to DEFENDANT HERIBERTO ANGEL's email and provided the following response:

> Per your email below, requiring our son to withdraw from Canyon High School in order to receive alternative educational accommodations during our appeal is neither legal nor appropriate. As I stated to you on numerous occasions, because we are appealing the OUSD's decision to expel [T.L.] from Canyon High School (aka placement), imposition of his punishment and requiring him to "withdraw" from Canyon as a prerequisite to

obtaining alternative sufficient educational measures is procedurally and substantively defective, as well as nonsensical.   Once again, we request that you hold the imposition of such expulsion punishment in abeyance pending all administrative appellate rights and provide an alternative educational measure pending the appeal. As you also know, we have not received any further information about the second appeal meeting, its procedures, a hearing date, etc.

As you know, tomorrow will be the 7th school day from which [T.L.] has not been provided educational measures, which is three days beyond his suspension (and two days beyond the maximum 5 day suspension allowed under Ca. Ed. Code Section 48911).

We urge the OUSD to resolve these procedural and substantive deficiencies with speed and immediate attention.

200.   Having received no response, on January 17, 2023, at 9:29 pm, T.L.'s mother once again sent another email to DEFENDANT HERIBERTO ANGEL informing him that T.L. and his parents had still not received any information about the second appeal and requested a response as soon as possible.

201.   After the close of business on January 18, 2023, at 5:36 pm, and seven days *after* upholding the SSP's unwritten and baseless decision, DEFENDANT HERIBERTO ANGEL provided written correspondence and informed T.L. and his parents that he "reviewed the evidence and the [SSP] determination, and agree that to best provide a positive school climate and appropriate learning environment for all students, [T.L.] will be assigned to a different learning environment, not Canyon High School. You may appeal this

CLASS ACTION COMPLAINT FOR DAMAGES

decision to [DEFENDANT DAVID RIVERA]. This appeal meeting is scheduled for Friday, January 20, 2023, at 9:00 a.m. in the District's Conference Room B. In the interim, the decision will be implemented and [T.L.] is not to return to Canyon High School."

202. Thus, T.L. and his parents were provided a written letter from DEFENDANT HERIBERTO ANGEL denying their purported "appeal" after close of business of the 7th day after the SSP hearing and purported first appeal.

203. Moreover, although DEFENDANT HERIBERTO ANGEL refers to "review" of the SSP determination, there has been no written SSP determination ever provided to T.L. or his parents.  In addition, DEFENDANTS continue to insist in form and function that an appeal does not qualify as an appeal.

204. Once again, DEFENDANT HERIBERTO ANGEL insisted that T.L. would have to withdraw from school.

205. Other than the date and location of the "second level appeal" there was no further information provided regarding the procedures, policies, or guidelines related to the second appeal.

## F.    The Second "Appeal"[6]

206.    With no information regarding the second level of appeal, T.L. and his parents attended the "second level appeal meeting" on January 20, 2023, with DEFENDANT DAVID RIVERA at 9:00 am.

207.    T.L. and his parents arrived 10 minutes before 9:00 am at the DEFENDANT OUSD offices.

208.    DEFENDANT DAVID RIVERA was 10 minutes late and he escorted T.L. and his parents to a meeting room around 9:10 am.

209.    At or around 9:15 am DEFENDANT DAVID RIVERA stated that T.L. and his parents "needed to wait for DEFENDANT HERIBERTO ANGEL."

210.    T.L.'s mother inquired as to the necessity for delay and waiting for DEFENDANT HERIBERTO ANGEL, particularly because he was the decisionmaker in denying the purported first appeal.

211.    DEFENDANT DAVID RIVERA insisted that it was "protocol" to have the first level appeal decisionmaker attend the second level appeal meeting. Accordingly, the parties would have to wait for DEFENDANT HERIBERTO

---

[6] Plaintiff does not concede that the actions that took place after the "first appeal" constituted a "second appeal" but it outlines the actions that were taken after Defendant Heriberto Angel referred Plaintiff to Defendant David Rivera. To date, there has been no information provided regarding the appeal process.

ANGEL'S arrival and attendance to begin.

212.    T.L.'s mother inquired about said protocols as this was the first time that anyone had referenced protocols related to the appeal process. Again, she requested a copy of these protocols, as requests for any written documents regarding procedures, protocols and policies had gone unanswered to date.

213.    DEFENDANT DAVID RIVERA stated that he would see about providing them to T.L. and his parents. To date, no such protocols have been produced to T.L. or his parents.

214.    At approximately 9:23 am, DEFENDANT DAVID RIVERA took a phone call outside the meeting room and then returned and informed T.L. and his parents that the parties could proceed with the meeting.

215.    T.L.'s mother inquired whether that was appropriate given DEFENDANT DAVID RIVERA's previously stated "protocols" requiring DEFENDANT HERIBERTO ANGEL'S attendance.

216.    DEFENDANT DAVID RIVERA proceeded without DEFENDANT HERIBERTO ANGEL'S attendance, notwithstanding contrary stated protocols.

217.    Without any guidance on the second appeal procedures, T.L. and T.L.'s parents proceeded to communicate the unfairness of the process and the absence of any procedures and even any substantive findings.

218.    DEFENDANT DAVID RIVERA inquired whether any interventions had previously been offered and T.L. and his parents confirmed that none had been offered or provided. DEFENDANT DAVID RIVERA stated that he had daughters and sympathized with his female daughters with respect to any sexual harassment claims.

219.    DEFENDANT DAVID RIVERA and T.L. and his parents met for approximately 35 minutes. At the conclusion DEFENDANT DAVID RIVERA stated that he would respond the following week.

220.    Upon information and belief, DEFENDANT DAVID RIVERA had never participated in a second level appeal process and was completely unaware of any procedures, standards, and protocol for the appeal.[7]

221.    Given that T.L. remained out of school because of DEFENDANTS' requirement that T.L. withdraw from school pending his appeal, a response the following week was too late. At this point, DEFENDANT T.L. had been prohibited from attending school for *eleven* school days.

---

[7] DEFENDANT CRAIG ABERCROMBIE was intended to be the second level appeal, as he had been recently appointed to be the Acting Superintendent, after the OUSD School Board fired the Superintendent and Assistant Superintendent in December 2022. However, DEFENDANT CRAIG ABERCROMBIE was the Principal at Canyon High School during the investigation involving T.L. and the decisionmaker to require T.L. to arbitrarily and unlawfully proceed to SSP. Thus, he was "recused" from the appeal process.

222.    On January 20, 2023, T.L.'s parents made an offer for the DEFENDANTS to resolve and complete the nightmare that T.L. and his family were living by providing the following: overruling the SSP, removing the sexual harassment violation from his record, and, in exchange, T.L. would withdraw from the District.

223.    DEFENDANT DAVID RIVERA did not respond on January 20, 2023. Instead, DEFENDANT DAVID RIVERA sent a letter on January 25, 2023, upholding the SSP's decision (again nothing in writing from the SSP to this point or to date).

224.    Further, in an egregious form of retaliation for the "appeal," DEFENDANT DAVID RIVERA, on behalf of DEFENDANT OUSD, found for the first time—without any reference or support in the record whatsoever—that T.L.'s "presence at Canyon High School is a continuing danger to Canyon's [female] students."

225.    Notwithstanding this blatant retaliatory and baseless finding, if such a finding was applicable, sending T.L. to another school with just as many female students merely highlights the preposterous nature of these escalating and retaliatory findings.

226.    Moreover, DEFENDANT DAVID RIVERA continued to retaliate

with impunity by also finding—without any support whatsoever—that T.L. "engaged in forcible attempts to kiss and touch the intimate parts of at least six Canyon High School students during the school day."

227.   There is not a single female that was kissed without consent, let alone forcibly kissed.

228.   There was no credible evidence that T.L. engaged in forcible attempts to touch any intimate parts of any girls, let alone six students!

229.   DEFENDANT DAVID RIVERA also failed to reconcile DEFENDANT HERIBERTO ANGEL's previous dismissal of the willful force violation. DEFENDANT DAVID RIVERA neglected to identify or (re)count any of the evidence that six females alleged that T.L. made "forcible" attempts to touch their "intimate" body parts. DEFENDANT DAVID RIVERA's findings are vile and abusive.

230.   DEFENDANT DAVID RIVERA's statements are patent lies, wholly unsupported and unsubstantiated by the record or any prior verbal or written findings by any DEFENDANTS, contrary to DEFENDANT HERIBERTO ANGEL's previous dismissal of any willful force, and clearly intended to retaliate against T.L. for exercising his First Amendment appeal rights.

231.   DEFENDANT DAVID RIVERA failed to provide a single fact in

support or justification of his retaliatory findings.

232.   T.L.'s actions, singularly or combined, did not rise to the level sexual harassment, as defined by Ca. Ed. Code §§ 48900.2 and 212.5.

233.   There is no reference or finding whatsoever throughout the disciplinary process, including the purported two appeals, by any of the DEFENDANTS, nor in any of DEFENDANTS' documents that:

    a.   T.L.'s actions, singularly or combined, were sufficiently severe or pervasive to have had a negative impact on any female's individual academic performance in accordance with Ca. Ed. Code § 48900.2;

    b.   T.L.'s actions were sufficiently severe or pervasive to create an intimidating, hostile or offensive education environment in accordance with Ca. Ed. Code § 48900.2;

    c.   T.L. was in a position of authority and/or power over his fourteen-year-old female peers and classmates;

    d.   T.L. made submission to any conduct an explicit or implicit term or a condition of any of his fourteen-year-old female peers and classmates' academic status or progress, as outlined in Ca. Ed. Code § 212.5(a);

e.  T.L. made submission to, or rejection of any conduct a basis of academic decisions affecting any of his fourteen-year-old female peers and classmates, as outlined in Ca. Ed. Code § 212.5(b);

f.  T.L.'s conduct had the purpose or effect of having a negative impact upon any of his fourteen-year-old female peers and classmates' work or academic performance, as outlined in Ca. Ed. Code § 212.5(c);

g.  T.L.'s conduct had the purpose or effect of creating an intimidating, hostile, or offensive educational environment for any of his fourteen-year-old female peers and classmates, as outlined in Ca. Ed. Code § 212.5(c);

h.  T.L. made submission to, or rejection of, his conduct as a basis for any decision affecting any of his fourteen-year-old female peers and classmates' benefits and services, honors, programs, or activities available at or through the educational institution, as outlined in Ca. Ed. Code § 212.5(d); or

i.  T.L. was provided any other means or alternatives of correction prior to expulsion and removal from Canyon High School by the SSP, in accordance with Ca. Ed. Code § 48900.5(b).

CLASS ACTION COMPLAINT FOR DAMAGES

234.   There is no reference or finding whatsoever throughout the disciplinary process, until the retaliatory findings and statements by DEFENDANT DAVID RIVERA, that T.L. presented a danger to any person, in accordance with Ca. Ed. Code § 48900.5.

235.   This was T.L.'s first offense, in accordance with Ca. Ed. Code § 48900.5.

**G.   Disciplinary Data**

236.   Upon information and belief, OUSD's categorization of "involuntary placement" by the SSP is a mechanism by which students of color are placed into a quasi-expulsion status, in order to avoid state laws requiring reporting of race and ethnicity disciplinary data. Plaintiff requested specific data related to the DEFENDANT OUSD's SSP data before, during, and after the disciplinary process implemented against T.L., as well as in subsequent Public Records Act requests. On May 15, 2023, DEFENDANT OUSD provided limited data regarding SSP. However, race and ethnicity data are missing and despite multiple requests for race and ethnicity data, none have been provided to date.

237.   Neither OUSD's policies and procedures nor the state education regulations provide the basis for determining when a child is subject to the OUSD-specific SSP process, how the SSP process is implemented, and/or the definition of or process for "involuntary placement."

238.   Based on DEFENDANT OUSD's public data, the district's student population is 26,000 and the demographic data is as follows: 23.7% are White, 57.7% are Hispanic; 9.9% Asian; 2.3% Filipino; and 1.3% Black.[8]

239.   Canyon High School and Villa Park are the two of the five high schools in OUSD with the highest concentrations of white students.

240.   Canyon High School has approximately 2,253 students and the demographic student data is as follows: 46.3% White, 22.9% Hispanic, 19.5% Asian, 2.7% Filipino, and 1.6% Black.[9]

241.   Villa Park High School has approximately 2,116 students and the demographic student data is as follows: 50.4% Hispanic, 33.1% White, 10.1% Asian, 2.2% Filipino, and 1% Black.[10]

242.   Publicly available data for years 2014-2022 and excluding 2020-2021 data due to COVID, provides the following:[11]

a.   For Orange Unified School District, including all of its high schools, Black students were suspended at over 2.6 times the rate of white students. This disparate impact was statistically significant at 5.7 units of standard deviation.  The probability of

---

[8] https://www.orangeusd.org/about-us.
[9] https://www.canyonhighschool.org/about
[10] https://www.villaparkhigh.org/about/school-profile
[11] https://www.ed-data.org/county/orange/

this deviation occurring by chance is less than 1-in-70 million.

b.  At Canyon High School, Black students were suspended over 3 times the rate of white students. This disparate impact was statistically significant at above 4 units of standard deviation.  The probability of this deviation occurring by chance is less than 1-in-a million.[12]

c.  At Villa Park High School, Black students were suspended over 3.6 times the rate of white students. This disparate impact was statistically significant at above 6.5 units of standard deviation.[13] The probability of this deviation occurring by chance is less than 1-in-a billion.

d.  For Orange Unified School District, including all of its high schools, Hispanic students were suspended at nearly 2.3 times the rate of white students. This disparate impact was statistically significant at above 10.4 units of standard deviation.  The probability of this deviation occurring by chance is less than 1-in-a billion.

---

[12] In 2019/20, Black students were suspended over 7.3 times the rate of white students.

[13] In years 2015/16, 2016/17, 2018/19, 2019/20, the suspension rates were 6, 3.5, 2.8, 3.4 and 8.4 times more likely than white students, respectively.

CLASS ACTION COMPLAINT FOR DAMAGES

e.   At Canyon High School, Hispanic students were suspended at 2 times the rate of white students. This disparate impact was statistically significant at nearly 5.5 units of standard deviation.[14] Similar to the school district results, this result is nearly impossible to have occurred by chance. The probability of this deviation occurring by chance is less than 1-in-25 million.

f.   At Villa Park High School, Hispanic students were suspended over 1.7 times the rate of white students. This disparate impact was statistically significant at 7.9 units of standard deviation.[15] The probability of this deviation occurring by chance is less than 1-in-a billion.

243.   OUSD's limited SSP data indicates that in 2019/2020, the OUSD "involuntarily placed" 88 students to another school in the district under the SSP process: 12 from Canyon High School; 2 from Community Day School; 25 from El Modena High School; 24 from Orange High School; 7 from Richland Continuation High School; and 18 from Villa Park High School.

---

[14] In years 2016/17, 2017/18, 2019/20, 2021/22, Hispanic students were suspended 2.2, 2.8, 2, and 2.2 times the rate of white students, respectively.
[15] In years 2014/15, 2015/16, 2016/17, 2018/19, 2021/22, Hispanic students were suspended 1.7, 2.1, 2.2, 1.7, 3.3, and 2.4 times the rate of white students, respectively.

244.    For 2019/2020, although less than 1% of these students subject to SSP came from OUSD's alternative high school, Community Day School, 16% of the student placements were sent to Community Day School.[16]  Community Day School serves grades 7-12, has 38 students, and is 71% Latino and 3% Black.

245.    Upon information and belief, OUSD's limited SSP data indicates that in 2021/2022, the OUSD "involuntarily placed" 65 students to another school in the district under the SSP process: 8 from Canyon High School; 12 from El Modena High School; 27 from Orange High School; 7 from Richland Continuation High School; and 11 from Villa Park High School. Notably, 2021/2022 data indicates that 38 students from OUSD middle schools and 2 students from OUSD elementary schools were also "involuntarily placed" through the SSP process.

246.    Upon information and belief, OUSD's limited SSP data indicates that in 2022/2023, the OUSD "involuntarily placed" 44 students to another school in the district under the SSP process: 8 from Canyon High School; 18 from El Modena High School; 12 from Orange High School; 0 from Richland Continuation High School; and 6 from Villa Park High School. Notably,

---

[16] Community Day School data was not provided for 2021/2022 and 2022/2023 data.

2022/2023 data indicates that 45 students from OUSD middle schools and 7 students from OUSD elementary schools were also "involuntarily placed" through the SSP process.

247.    T.L.'s SSP panel occurred on a day when 4-5 other SSP's were occurring and all other students subject to SSP were students of color.

248.    All of the purported SSP data was incomplete and did not include race/sex/ethnicity data, notwithstanding initial and repeated requests for such data. Upon information and belief, the SSP data would, at a minimum be consistent with the public disciplinary data and likely reflect more significant racial and ethnic disparities regarding the students subject to SSP; the violations subject to the SSP; the outcome of the SSP; the schools from which the students originate; the schools at which the students are "involuntarily placed;" appeals processes, if any; and return, if applicable.

## H.    Injuries and Damages

249.    Each of the acts throughout this Complaint by each Defendant directly and proximately caused Plaintiff to suffer the following: violation of civil rights; loss of freedom from unreasonable detention; loss of freedom to move about; loss of education; damage to reputation; loss of privacy; intrusion upon seclusion; emotional distress, including pain and suffering, humiliation, stress,

anxiety, and extreme mental anguish and confusion, including but not limited to:

a. DEFENDANT OUSD, through and including DEFENDANT GREG SMITH's actions on December 15, 2022, during the over two-hour interrogation of T.L., including threats, intimidation, coercion, false statements, and inquiries regarding sexual abuse at home.

b. DEFENDANT OUSD, through and including DEFENDANT GREG SMITH's actions on December 15, 2022, after the over two-hour interrogation of T.L.

c. DEFENDANT OUSD, through and including DEFENDANT NORA ALVAREZ's actions on December 15, 2022, during the over two-hour interrogation of T.L. including threats, intimidation, coercion, false statements, inquiries regarding sexual abuse at home, and improper, if not abusive, information and sexual innuendo regarding DEFENDANT ALVAREZ's sexual activity with her husband.

d. DEFENDANT OUSD, through and including DEFENDANT NORA ALVAREZ's actions on December 15, 2022, after the over two-hour interrogation of T.L.

e. DEFENDANT OUSD, through and including DEFENDANT

GREG SMITH, DEFENDNAT NORA ALVAREZ, and

DEFENDANT CRAIG ABERCROMBIE for the suspension of

T.L. for sexual harassment and willfully using force.

f.  DEFENDANT OUSD, through and including DEFENDANT

GREG SMITH, DEFENDANT NORA ALVAREZ, and

DEFENDANT CRAIG ABERCROMBIE for the

"determination" to proceed to additional discipline for T.L.

through the SSP.

g.  DEFENDANT OUSD, through and including DEFENDANT

GREG SMITH, DEFENDANT NORA ALVAREZ, and

DEFENDANT CRAIG ABERCROMBIE for the absence of any

policies or procedures regarding the SSP.

h.  DEFENDANT OUSD, through and including DEFENDANT

GREG SMITH, DEFENDANT NORA ALVAREZ, and

DEFENDANT CRAIG ABERCROMBIE for providing serial

disciplines and punishment to T.L. and other similarly situated

students.

i.  DEFENDANT OUSD, through and including DEFENDANT

GREG SMITH, DEFENDANT NORA ALVAREZ, and

DEFENDANT CRAIG ABERCROMBIE for failing to provide

any substantive notice regarding the allegations against T.L. until the SSP on January 11, 2023, despite repeated requests for such details and statements throughout December 2022, and as early as December 15, 2022.

j.  DEFENDANT OUSD, through and including the DEFENDANT MEMBERS OF THE OUSD SSP Panel for the constitutionally deficient and mysterious SSP process.

k.   DEFENDANT OUSD, through and including the DEFENDANT MEMBERS OF THE OUSD SSP Panel for the absence of any policies or procedures related to the SSP process.

l.  DEFENDANT OUSD, through and including the DEFENDANT MEMBERS OF THE OUSD SSP Panel for the ultimate decision to impose additional punishment and discipline on T.L. by expelling T.L. from Canyon High School and "involuntarily transferring" T.L. to another school.  To date, not a single document has ever been provided regarding the SSP's decision, their vote, their justification, their considerations, and/or their processes.

m. DEFENDANT OUSD, through and including DEFENDANT HERIBERTO ANGEL for failure to have any policies or procedures related to the first level of appeal.

n. DEFENDANT OUSD, through and including DEFENDANT HERIBERTO ANGEL for his repeated insistence that T.L.'s appeal rights did not include the abeyance of the discipline that was the subject of his appeal.

o. DEFENDANT OUSD, through and including DEFENDANT HERIBERTO ANGEL for the denial of T.L.'s educational rights, for at least seven (7) educational days, as a condition of his appeal rights.

p. DEFENDANT OUSD, through and including DEFENDANT HERIBERTO ANGEL for the decision to uphold the SSP's decision, without any substantive explanation or basis of his review and justification.

q. DEFENDANT OUSD, through and including DEFENDANT HERIBERTO ANGEL for failure to have any policies or procedures related to the second level of appeal.

r. DEFENDANT OUSD, through and including DEFENDANT DAVID RIVERA for failure to have any policies or procedures

related to the second level of appeal.

s.  DEFENDANT OUSD, through and including DEFENDANT DAVID RIVERA for failure to provide copies of stated "protocols" during the second appeal hearing.

t.  DEFENDANT OUSD, through and including DEFENDANT DAVID RIVERA for failure to follow stated "protocols" during the second appeal hearing.

u.  DEFENDANT OUSD, through and including DEFENDANT DAVID RIVERA for denying T.L.'s appeal rights by not including the abeyance of the discipline that was the subject of his appeal.

v.  DEFENDANT OUSD, through and including DEFENDANT DAVID RIVERA for the denial of T.L.'s educational rights, for at least seven (7) educational days, as a condition of his appeal rights.

w. DEFENDANT OUSD, through and including DEFENDANT DAVID RIVERA for the decision to uphold the SSP's decision and DEFENDANT HERIBERTO ANGEL'S appeal decision without any substantive explanation or basis of his review and justification.

CLASS ACTION COMPLAINT FOR DAMAGES

x.  DEFENDANT OUSD, through and including DEFENDANT DAVID RIVERA for his retaliation against T.L. for asserting his appeal rights. Specifically, DEFENDANT RIVERA incorporated into his January 25, 2023, letter that he was upholding the decision and for the very first time during the entire process states: that T.L. engaged in "forcible attempts to kiss and touch the intimate parts of at least six Canyon High School students during the school day." This is patently false, and in clear retaliation of T.L.'s appeal rights. Moreover, DEFENDANT DAVID RIVERA's finding is wholly contrary to DEFENDANT HERIBERTO ANGEL's decision during the first appeal to remove the "willful force" violation under Ca. Ed. Code. 48900(a)(2). In addition, DEFENDANT DAVID RIVERA, further states, again for the first time and in clear retaliation to T.L. for exercising his appeal rights, that T.L.'s "presence at Canyon High School is a continuing danger to Canyon's students." This statement is also post-hoc, without any support in any of the prior findings by any DEFENDANT OUSD employee or agent.

250.  As a fourteen-year-old boy, T.L. suffered from emotional distress as a

result of the unsubstantiated adult allegations of "sexual harassment" imposed upon his normal and non-deviant actions as a fourteen-year-old boy. The DEFENDANTS' procedural and substantive violations against T.L. shock the conscience.

251.  As outlined in one of the statements in support of T.L., by a licensed therapist: the DEFENDANT OUSD's actions and disciplinary posture were not tailored or age-appropriate for the behaviors at issue. That DEFENDANT OUSD was inappropriately pathologizing and publicly shaming T.L., while at the same time disempowering the involved female minors as "inept waifs" with stories of victimhood and voicelessness. Further, this statement also provided that hours of interrogation by a nonclinical adult, threats of suspension, legal action, and pressure for immediate written confessions was far too aggressive a response that led to a traumatizing response, lacking respect or perspective on a child's developmental level of maturation.

252.  Ultimately, Plaintiff T.L. was forced to withdraw from Canyon High School in violation of his due process and equal protection rights, as well as other federal and statutory violations set forth throughout this Complaint.

253.  Plaintiff endured, and continues to endure, pain and suffering due to each and every act and omission of all Defendants, and each of them, as set forth throughout this Complaint.

# VI.   **CLASS ALLEGATIONS**

254.   Plaintiff brings certain causes of action[17] in this lawsuit on behalf of the following class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4): "All OUSD students of color who (a) received OUSD disciplinary violations that could have or did result in suspension and/or expulsion, and/or (b) were referred to the Student Success Panel."

255.   Plaintiff reserves the right to modify or amend the class definition, including the addition of one or more subclasses, after having the opportunity to conduct discovery.

256.   Excluded from the Class are Defendants and any of their affiliates, parents, subsidiaries, officers, and directors; any entity in which Defendants have a controlling interest; all persons who make a timely election to be excluded from the class; governmental entities; and all judges assigned to hear any aspect of this litigation, including their immediate family members.

257.   Numerosity: By way of example, OUSD suspended thousands of students of color from academic year 2014-2015 through academic year 2021-2022. As such, the members of the Class are so numerous that joinder is

---

[17] Plaintiff specifically identifies these causes of action within "Claims for Relief," below.

impractical.

258.   Typicality: The claims for which Plaintiff seeks class treatment are typical of the claims of each class member in that Plaintiff, like all class members, are and were OUSD students of color. Plaintiff and the Class Members were injured through DEFENDANTS' disciplinary "programs," including the SSP, which discriminate on the basis of race/ethnicity and deprives them of procedure and due process. Thus, Plaintiff is advancing substantially similar legal theories on behalf of himself and the Class, and Plaintiff's typicality is not impacted by any potential difference posed by the causes of action he asserts individually in this complaint.

259.   Adequacy: Plaintiff will fairly and adequately protect the interest of the Class. Plaintiff's interests and the interests of all other members of the Class are identical, and Plaintiff is cognizant of his duty and responsibility to the Class. Accordingly, Plaintiff can fairly and adequately represent the interests of the Class. Moreover, Plaintiff's counsel are competent and experienced in litigating class actions, including litigation of this kind. Plaintiff's counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

260.   Commonality and Predominance: There are numerous questions of law and fact common to the Class, and these common questions predominate over

any issues affecting only individual class members.  Common questions include but are not limited to:

    a.  Whether the OUSD Defendants' disciplinary system, including the SSP, violates Plaintiff's and the Class Members' procedural and due process rights;

    b.  Whether the OUSD Defendants' disciplinary processes leading to suspension/expulsion, including the SSP, discriminate against students of color, including Plaintiff and the Class Members;

    c.  Whether that discrimination is on the basis of race and/or ethnicity;

    d.  Whether OUSD Defendants' conduct was under the color of state law;

    e.  Whether OUSD Defendants' conduct has caused Plaintiff and the Class Members injury; and

    f.  The scope of the injunctive relief and damages to which the Plaintiff and Class Members are entitled.

261.    Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose

of a class action is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Individual litigation by each Class Member would also strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. In sum, the class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

262.    Equitable Relief: Class certification is also appropriate under Rule 23(b)(2) because OUSD has acted and refused to act on grounds generally applicable to the Class as a whole, such that final injunctive relief is appropriate with respect to the Class as a whole. Such injunctive relief includes, but is not limited to, the expungement of OUSD's violative disciplinary actions, including suspension and expulsion, from Plaintiff's and the Class Members' school records.

263.    This action is also properly maintainable under Rule 23(c)(4) in that particular issues common to the Class, examples of which are set out *supra*, are most appropriately and efficiently resolved via class action, and would advance the disposition of this matter and the parties' interests therein.

# VII.    CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
## Fourteenth Amendment-Equal Protection (Race and Ethnicity)
## (Plaintiff and the Class Against All OUSD Defendants)

264.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

265.    Plaintiff brings this claim individually and on behalf of the Class.

266.    DEFENDANT OUSD, by and through its employees, has implemented a disciplinary system that discriminates on the basis of race and/or ethnicity.

267.    DEFENDANT OUSD, by and through its employees, have implemented a disciplinary system known as the Student Success Panel or SSP that discriminates on the basis of race and/or ethnicity.

268.    The SSP is a vague and opaque process by which DEFENDANT OUSD has not provided a single policy or procedure related to this disciplinary consequence that effectively expels students from their schools under the auspices of an "involuntary transfer." This involuntary transfer is a form of severe discipline and is intentionally utilized and implemented disproportionately against students of color and is intentionally used by DEFENDANT OUSD to mask its discriminatory educational disciplinary data.

269.    DEFENDANT OUSD refers to the SSP as neither suspension nor

expulsion. However, there is not a single policy or procedure related to the SSP anywhere in DEFENDANT OUSD's policies or procedures, the Canyon High School's policies or procedures, or anywhere else.

270. DEFENDANT OUSD has been unable to provide a single document explaining the SSP; its purpose; its procedures; and the circumstances under which an SSP is utilized other than to say "the school site has determined the nature of your child's offense is beyond that of a standard suspension."

271. Upon information and belief, OUSD's categorization of "involuntary placement" by the SSP is a mechanism by which students of color are placed into a quasi-expulsion status, in order to avoid state laws requiring reporting of race and ethnicity disciplinary data.

272. Neither OUSD's policies and procedures nor the state education regulations provide the basis for determining when a child is subject to the OUSD-specific SSP process, how the SSP process is implemented, and/or the definition of or process for "involuntary placement."

273. Upon information and belief, the DEFENDANT OUSD's arbitrary use of the SSP discriminates against students of color on the basis of race, color, and ethnicity. Based on public suspension data outlined herein, DEFENDANT OUSD's disciplinary suspensions, whether as a result of SSP or otherwise,

discriminate against students of color on the basis of race or color, and ethnicity. Moreover, DEFENDANT OUSD has refused to share the SSP-specific data, contrary to state law.

274.   For example, Black students in OUSD high schools are suspended at over 2.6 times the rate of white students. This disparate impact was statistically significant at 5.7 units of standard deviation.  The probability of this deviation occurring by chance is less than 1-in-70 million.

275.   Hispanic students in OUSD high schools are suspended at over 2.3 times the rate of white students. This disparate impact was statistically significant at 10.4 units of standard deviation.  The probability of this deviation occurring by chance is less than 1-in-a-billion.

276.   All of the purported SSP-specific data was incomplete and did not include race/sex/ethnicity data, notwithstanding initial and repeated requests for such data. Upon information and belief, the SSP data would, at a minimum be consistent with the public disciplinary data and likely reflect more significant racial and ethnic disparities regarding the students subject to SSP; the violations subject to the SSP; the outcome of the SSP; the schools from which the students originate; the schools at which the students are "involuntarily placed;" appeals processes, if any; and return, if applicable.

277.   These significant disparate disciplinary data, along with the absence of any guidelines, policies, or procedures in English or Spanish, at a minimum, provide compelling evidence that DEFENDANT OUSD, by and through its employees, is discriminating against students of color on the basis of race, color, ethnicity, and/or sex in violation of the Equal Protection clause of the Fourteenth Amendment.

278.   DEFENDANTS OUSD, GREG SMITH, NORA ALVAREZ, CRAIG ABERCROMBIE, HERIBERTO ANGEL, DAVID RIVERA, and DOE DEFENDANTS 1-3 individually and collectively have intentionally masked, obfuscated, and hidden the policies and procedures related to the SSP. No student past or present was aware of the SSP, its policies or procedures, or the appeal process.

279.   DEFENDANTS' actions were intentional and with deliberate deprivation and/or indifference to the constitutional interests of Plaintiff and the Class Members.

280.   DEFENDANTS' imposition of its educational code violations and the disciplinary processes thereto are applied differently on the basis of race, ethnicity, and/or sex from similarly situated individuals who had committed or had been accused of committing educational code violations and denied equal

protection under the Fourteenth Amendment of the United States Constitution.

281.   The complained of acts of DEFENDANTS were shocking to the conscience, beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that they may fairly be said to shock the contemporary conscience.

282.   Plaintiff and the Class specifically allege that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff and the Class.

283.   As a direct and proximate result of this conduct, Plaintiff and the Class Members suffered injury and damages, including but not limited to violation of civil rights, loss of education, loss of reputation, loss of opportunity, emotional distress, and mental anguish.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
### (Fourteenth Amendment Due Process)
### (Plaintiff and the Class Against All OUSD Defendants)

284.   Plaintiff incorporates all paragraphs, as though fully set forth herein.

285.   Plaintiff brings these claims individually and on behalf of the Class.

286.   At all times, each of the OUSD Defendants and employees was acting

under color of state law in the performance of his or her official duties.

287.   Defendant OUSD's disciplinary actions, findings, and procedures, including, but not limited to the suspension and SSP processes, are nonexistent, vague, and/or arbitrary.[18]

288.   As outlined in further detail above, Defendant OUSD has no written policies or procedures related to the SSP. In fact, a google search of "student success panel" or SSP results in no substantive information related to any policies or procedures related thereto.  The OUSD website has no reference whatsoever to the SSP. Further, DEFENDANT GREG SMITH admitted that there was no substantive information regarding the policies or procedures of the SSP to provide Plaintiffs, upon their request.

289.   Defendants' "*policy of having no policy*" exists to give them unfettered discretion to impose discipline or show favor based upon their own preferences and desires, rather than in conformity with due process and fairness. In violation of his due process and in the absence of rudimentary precautions, T.L. was not provided written or oral notice of the charges against him.

290.   There were no processes in place for any appeals.

---

[18] Even the Board's own policy says it "shall develop…the policies and procedures for addressing violations of [the standards of behavior], including suspension and/or expulsion." 5144.1(a).

CLASS ACTION COMPLAINT FOR DAMAGES

291.    There were no policies in place for any appeals.

292.    DEFENDANTS required Plaintiff, and upon information and belief other Class Members, to withdraw from school in order to exercise their right to appeal to stay in school. This policy denied Plaintiff and Class Members due process.

293.    The absence of *any* policies or procedures related to DEFENDANT OUSD's entire disciplinary process on its face and as applied to T.L. and the Class Members violate procedural due process under the Fourteenth Amendment of the United States Constitution.

294.    As set forth throughout this Complaint, DEFENDANT OUSD and their employee and agent DEFENDANTS' actions violated substantive due process as they were an abuse of government power.

295.    As set forth throughout this Complaint, the violations against T.L. were unsupported, uncorroborated, and unsubstantiated. T.L.'s actions were not sexual; did not constitute sexual harassment; were not severe; were not pervasive; and were not objectively unreasonable.

296.    The DEFENDANT OUSD, by and through their employees, abused their power and authority by deeming normal teenager behavior (by both teen boys and girls) as sexual harassment and violating T.L.'s educational rights.

297.   The single interpersonal interactions between a T.L., a male fourteen-year-old child, and separate single interactions with female fourteen-year-old peers do not rise to the requisite level of severity individually or collectively. DEFENDANT OUSD, by and through their employees, aggregated five interpersonal interactions that T.L. had with five different female peers over the course of an entire semester—four months—to erroneously determine that T.L. was a "sexual harasser." Other than Student A, whose mother purportedly demanded an investigation of an "uncomfortable" encounter between her daughter and T.L.—which does not qualify as sexual harassment--no other female had previously complained or alleged that they had been "sexually harassed."

298.   As the Department of Education, Office of Civil Rights guidance on sexual harassment states: "[S]chool personnel should consider the age and maturity of students when responding to allegations of sexual harassment." Moreover, "age is relevant in determining whether a student welcomed the conduct and determining whether the conduct was severe, persistent, or pervasive." 62 FR 12034.

299.   T.L.'s isolated and nonsexual interactions with other fourteen-year-old female students would not be considered by a reasonable female girl to be "sufficiently severe" or "pervasive" to have a negative impact upon the female's

academic performance under Ca. Ed. Code § 48900.2, and Section 212.5, nor did the DEFENDANTS make any such findings.

300.   T.L.'s isolated and nonsexual interactions with other fourteen-year-old female students would and could not be considered by a reasonable female girl to create an "intimidating, hostile, or offensive educational environment" under Ca. Ed. Code § 48900.2 and Section 212.5.

301.   As set forth throughout this Complaint, DEFENDANT OUSD and their employee and agent DEFENDANTS' actions and omissions fail to provide basic procedural due process throughout the disciplinary process, including from initial interrogation, to suspension, to SSP, and through two appeals.

302.   As set forth throughout this Complaint, DEFENDANT OUSD and their employee and agent DEFENDANTS' actions and omissions violate substantive due process for all Class Members, *i.e.*, students subjected to OUSD disciplinary action implicating suspension and/or expulsion and students referred to the SSP.

303.   As a direct and proximate result of this conduct, Plaintiff and the Class Members suffered injury and damages, including but not limited to violation of civil rights, loss of education, loss of reputation, loss of opportunity, emotional distress, and mental anguish.

### THIRD CLAIM FOR RELIEF
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**(Fourth Amendment-Unlawful Seizure)**
**(Plaintiff Against All OUSD Defendants)**

304.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

305.    This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the Fourth Amendment to the United States Constitution.

306.    The Fourth Amendment protects Plaintiff from an unreasonable seizure.

307.    T.L. was detained by government officials without legal basis, lawful reason, or justifiable excuse against his will.

308.    T.L.'s restriction of movement and restraint for over two hours of interrogation and emotional abuse was unreasonable and in violation of Plaintiff's Fourth Amendment rights.

309.    DEFENDANT OUSD and its employees, including, but not limited to DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ, prevented T.L. from leaving DEFENDANT GREG SMITH's office for over two hours without a reasonable basis or justification and was impermissible by any reasonable standards.

310.    It was unreasonable to continue to coerce, intimidate, and threaten

CLASS ACTION COMPLAINT FOR DAMAGES

T.L. for over two hours during the school day to chase unsubstantiated claims of sexual harassment, and without even disclosing to T.L. that that is what they were doing.

311.    DEFENDANT OUSD and its employees, including, but not limited to DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ, engaged in abusive and offensive interrogation tactics against a fourteen-year-old boy to extract coerced statements regarding his interpersonal interactions with his fourteen-year-old peers.

312.    DEFENDANT OUSD and its employees, including, but not limited to DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ's abusive and offensive actions shock the conscience and are impermissible abuses of power under the United States Constitution.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**(First Amendment-Freedom of Speech)**
**(Plaintiff Against All OUSD Defendants)**

313.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

314.    This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the First Amendment to the United States Constitution.

315.    The First Amendment guarantees Plaintiff's freedom of speech and

expression permitting Plaintiffs to, *inter alia*, freely and lawfully express opinions or ideas. This expression may be accomplished verbally, demonstratively, and/or symbolically.

316.   In the course of normal male or female fourteen-year-old behavior, T.L., a male, requested permission to kiss his female fourteen-year-old peers. When the females declined, he complied with their requests and never physically forced any of them to engage in any physical contact.

317.   DEFENDANT OUSD, by and through its employees, disciplined and penalized T.L. for the content of this speech and for engaging in this expression.

318.   DEFENDANTS, and each of them, not only penalized and disciplined T.L. for his verbal speech, but they also did so in disapproval and reprisal of T.L.'s expression of himself as a heterosexual male.

319.   Due to each DEFENDANTS' actions and/or omissions, T.L. suffered harm and injuries, including emotional distress and damage to reputation.

## FIFTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
### (First Amendment-Right to Petition/Freedom from Retaliation)
### (Plaintiff Against All OUSD Defendants)

320.   Plaintiff incorporates all paragraphs, as though fully set forth herein.

321.   This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity

secured to him by the First Amendment to the United States Constitution.

322.   T.L. engaged in a constitutionally protected right to petition for constitutional protections, including, but not limited to, evidentiary proffer, due process, and appeals, related to the disciplinary actions and findings taken against him by DEFENDANT OUSD and individually named DEFENDANT OUSD employees.

323.   As a result of exercising his rights to petition for constitutional protections, including, but not limited to, evidentiary proffer, due process, and appeals, related to the disciplinary actions and findings taken against him by DEFENDANT OUSD and individually named DEFENDANT OUSD employees, he was subjected to adverse action by DEFENDANT OUSD and individually named DEFENDANT OUSD employees. Adverse action included denial of his appeal rights and request for abeyance of the discipline that was the subject matter of appeal, inability to receive and continue his education pending appeal, loss of educational days outside of his four-day suspension (for a total of 10 educational days), damage to reputation and character, mental and emotional abuse, retaliatory escalation of violations, and retaliatory trumped-up charges.

324.   The adverse actions outlined here and throughout this Complaint would undoubtedly chill a person of ordinary firmness, particularly a 14-year-old

boy, from continuing to engage in the protected activity (the right to petition).

325.   In particular, the adverse actions by DEFENDANT DAVID RIVERA, under the auspices of a second level appeal, as outlined throughout this Complaint are particularly offensive, egregious, and subject to constitutional remedies. DEENDANT DAVID RIVERA retaliated against T.L. and his parents for seeking an appeal.

326.   DEFENDANT HERIBERTO ANGEL engaged in adverse actions against T.L. by requiring him to begin his punishment (i.e., withdraw from Canyon High School immediately) notwithstanding his appeal rights.

327.   There was substantial causal relationship between T.L.'s exercise of his First Amendment right to petition and the multiple adverse and deliberate actions taken against him by DEFENDANT OUSD and individually named DEFENDANT OUSD employees.

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**Unconstitutional Policy, Custom, or Procedure (*Monell*)**
**(Plaintiff and the Class Against Defendant OUSD)**

328.   Plaintiff incorporates all paragraphs, as though fully set forth herein.

329.   Plaintiff brings this claim individually and on behalf of the Class.

330.   This cause of action arises under 42 U.S.C. §1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity

secured to them by the Fourteenth Amendment to the United States Constitution.

331.   As outlined throughout this Complaint, DEFENDANT OUSD did not have any policies or procedures related to 1) disciplinary process, particularly with respect to investigations of sexual harassment or willful force; 2) the appeal process; 3) the SSP; 4) the appeal process; or 5) the second level appeal process.

332.   DEFENDANT OUSD, by and through DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ conducted their "me-too" "investigation" of a 14-year-old boy with no policies or procedures in place to guide their interrogations, credibility and veracity of witnesses, physical evidence, corroborating evidence, hearsay, and fundamental fairness and objectivity regarding the substantive violations.

333.   DEFENDANT OUSD, by and through the MEMBERS OF THE OUSD SSP, conducted a kangaroo court hearing without a single policy or procedure related to their proceedings or their ultimate findings. In fact, to date, nothing from the SSP has ever been provided.

334.   DEFENDANT OUSD, by and through DEFENDANT HERIBERTO ANGEL participated in an "appeal" with no policies and procedures in place and his subsequent justifications are post-hoc and without any objective record.

335.    DEFENDANT OUSD, by and through DEFENDANT DAVID RIVERA participated in a "second appeal" with no policies and procedures in place and even engaged in retaliation against T.L. by making completely baseless and unsupported egregious findings against T.L. that had never been stated, let alone supported, in previous faulty proceedings.

336.    DEFENDANT OUSD violated Plaintiff's and Class Members' constitutional rights, as alleged supra, by creating and maintaining the following unconstitutional customs and practices, inter alia:

   a.   Plaintiff alleges that DEFENDANT OUSD has a *de facto* policy, custom, and/or practice of not protecting the procedural due process rights of its students throughout its disciplinary process;

   b.   Plaintiff alleges that DEFENDANT OUSD has a *de facto* policy, custom, and/or practice of not protecting the substantive due process rights of its students throughout its disciplinary process;

   c.   Plaintiff alleges that DEFENDANT OUSD has a *de facto* policy, custom, and/or practice of retaliating against students who exercise their due process rights;

   d.   Plaintiff alleges that DEFENDANT OUSD has a *de facto* policy, custom, and/or practice of denying students equal protection on the basis of race, color, ethnicity, and/or sex.

e.   Plaintiff alleges that DEFENDANT OUSD has a *de facto* policy, custom, or practice of inadequately monitoring and/or investigating their employees' misconduct, including disciplinary investigations, decisions, and retaliation;

337.   Plaintiff is informed, believe, and thereupon alleges that these policies, practices, customs, and procedures are intentional and/or the result of deliberate indifference on the part of DEFENDANT OUSD, by and through its decision makers.

338.   The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Plaintiffs and the Class.

339.   Plaintiff specifically alleges that DEFENDANT OUSD'S policies, customs, and/or practices, as described herein, were within the control of DEFENDANT OUSD and within the feasibility of DEFENDANT OUSD to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff and the Class.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**Failure to Train, Supervise, Discipline, or Correct**
**(*City of Canton & Larez*)**
**(Plaintiff and the Class Against Defendant OUSD)**

340.   Plaintiff incorporates all paragraphs, as though fully set forth herein.

341.   Plaintiff brings this claim individually and on behalf of the Class.

CLASS ACTION COMPLAINT FOR DAMAGES

342.   This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff and the Class seek to redress a deprivation under color of law of a right, privilege, or immunity secured to them by the Fourteenth Amendment to the United States Constitution.

343.   As outlined throughout this Complaint, including the Sixth Claim for Relief above, because of or in addition to the absence of policies or procedures, DEFENDANTS had no training, supervision, discipline or correction related to the procedural and substantive failures engaged by each of the OUSD DEFENDANTS. In fact, it was clear that there are no policies and procedures in place, informal or otherwise, related to the disciplinary process at Canyon High School when DEFENDANT GREG SMITH commented to T.L.'s parents that nobody had previously requested to see evidence related to a disciplinary violation. Moreover, DEFENDANT HERIBERTO ANGEL and DEFENDANT DAVID RIVERA were completely clueless about the process and could not even communicate orally to T.L. and his parents the process and steps for appeal *because there were no steps in place for the appeal process.*

344.   Upon information and belief, at a minimum, DEFENDANT DAVID RIVERA had never participated in a second appeal; had no idea what the process was required to entail; had no training regarding a second appeal; referenced

nonexistent "protocols" requiring the parties to wait for DEFENDANT HERIBERTO ANGEL's participation in the "second appeal" and then jettisoned any such mandatory protocols a few minutes later; and retaliated against T.L. by making unsubstantiated findings completely outside the previous record, to the extent there was a record.

345.    DEFENDANT OUSD violated Plaintiff's and the Class Members' constitutional rights, as alleged *supra*, by creating and maintaining the following unconstitutional customs and practices, inter alia:

   a.  Plaintiff is informed, believes, and thereupon alleges that DEFENDANT OUSD has had ample reason to know that its employees failed to provide procedural due process to its students with respect to the entire disciplinary process, including the SSP;

   b.  Plaintiff is informed, believes, and thereupon alleges that DEFENDANT OUSD has had ample reason to know that its employees failed to provide substantive due process to its students with respect to the entire disciplinary process, including the SSP;

   c.  Plaintiff is informed, believes, and thereupon alleges that DEFENDANT OUSD has had ample reason to know that its employees failed to provide equal protection to its students without

regard to race, color, ethnicity, and/or sex;

d.  Plaintiff is informed, believes, and thereupon alleges that DEFENDANT OUSD failed to properly train, supervise, and/or discipline employees, officers, managers, and supervisors within DEFENDANT OUSD as to the legal requirements, obligations, and protections applicable to persons set forth in the United States and California Constitutions and other laws;

e.  Plaintiff is informed, believes, and thereupon alleges that DEFENDANT OUSD failed to properly train, supervise, and/or discipline employees, officers, managers, and supervisors within DEFENDANT OUSD as to the legal requirements, obligations, and protections applicable to persons set forth in the United States and California Constitutions and other laws; and

f.  Plaintiff alleges that these failures amount to a *de facto* policy and are intentional and/or the result of deliberate indifference on the part of DEFENDANT OUSD, by and through its decision makers. These include, but are not limited to DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL

MEMBERS, and their subordinates, as necessary to further these improper policies, practices, customs, and procedures.

346.    The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Plaintiff and the Class Members.

347.    DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and/or DEFENDANT SSP PANEL MEMBERS, DOEs 1-3, individually and collectively acted in a supervisory capacity with respect to the incidents involving Plaintiff and the Class Members. In that capacity, DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL MEMBERS, DOEs 1-3, acted intentionally, maliciously, and in conscious disregard, and/or with deliberate indifference to the rights of Plaintiff and the Class Members.

348.    These supervisory failures of DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL MEMBERS directly caused and contributed to

Plaintiff's and the Class Members' damages.

349.    Plaintiff specifically alleges that DEFENDANT OUSD, DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL MEMBERS' constitutionally defective policy, custom, and practice, as described supra, was within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein.

### EIGHTH CLAIM FOR RELIEF
### VIOLATION OF TITLE IX (20 U.S.C. § 1681 *et seq.*)
### (Plaintiff Against All OUSD Defendants)

350.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

351.    This cause of action arises under 20 U.S.C. § 1681(a), wherein Plaintiff seeks to redress discrimination under an education program receiving Federal financial assistance.

352.    DEFENDANT OUSD is an education program receiving Federal financial assistance.

353.    DEFENDANT OUSD, by and through its employees, discriminated against T.L. based on sex or gender stereotypes by treating his female fourteen-year-old peers as fragile, in need of heightened protection because of their gender,

and unable to make independent autonomous decision-making regarding their interactions with their male peers.

354.    DEFENDANT OUSD, by and through its employees, discriminated against T.L. based on sex or gender stereotypes that boys' motivations and interactions with females are predatory and sexualized; whereas girls' motivations and interactions with males are innocent and non-sexualized and in need of heightened protection.

355.    DEFENDANT OUSD, by and through its employees, functioned in a paternalistic position with respect to the female minors, but denied T.L. the same paternalistic protections and evidentiary accommodations that it provided the females.

356.    Defendant OUSD, by and through its employees, discriminated against T.L. based on sex or gender stereotypes by giving more credibility and weight to female students' hearsay claims than T.L.'s denials of the female student's uncorroborated hearsay claims.

357.    Defendant OUSD, by and through its employees, discriminated against T.L. based on sex or gender stereotypes by exacting disproportionate and severe punishment and discipline on T.L. for flirting with his female peers than his female peers who engaged in criminal or potentially criminal acts, including,

but not limited to using illegal drugs, making false statements, and violating two-party consent statutes.

358.    DEFENDANT OUSD, by and through its employees, had actual knowledge and deliberate indifference to the rights and protections that should have been equally afforded to T.L. Moreover, the responses, actions, and omissions by the DEFENDANT OUSD, by and through all of its employee DEFENDANTS, were clearly unreasonable in light of the known circumstances.

## NINTH CLAIM FOR RELIEF
### CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. §1985 )
#### (Plaintiff Against All Defendants)

359.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

360.    DEFENDANT OUSD, DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, DEFENDANT SSP PANEL MEMBERS, and one or more female fourteen-year-old DOE DEFENDANTS conspired together to deprive Plaintiff of his procedural and substantive due process rights and equal protection rights, in violation of 42 U.S.C. §1985.

361.    One or more Defendants acted in furtherance of the conspiracy by intentionally:

  a.  Providing hearsay statements that were given undue weight,

notwithstanding contrary hearsay evidence, physical evidence, and other circumstantial evidence;

b.   Obtaining and withholding recordings in violation of state two-party consent requirements; and

c.   Imposing serial disciplinary actions without due process and equal protection based on statements from T.L. and other females obtained under duress, threats, intimidation, and coercion.

362.    As a direct and proximate result of DEFENDANTS' conspiracy, Plaintiff was deprived of his constitutional and statutory rights and experienced mental, emotional, and physical suffering, because of the DEFENDANTS' acts or omissions.

## TENTH CLAIM FOR RELIEF
### NEGLIGENCE
**(Plaintiff and the Class Against All OUSD Defendants)**

363.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

364.    Plaintiff brings this claim individually and on behalf of the Class.

365.    This cause of action arises under the general laws and Constitution of the State of California.

366.    For purposes of this claim for relief, allegations are deemed to sound in negligence, and set forth pursuant to Cal Civ Code §§ 1714, 3333.

367.    DEFENDANTS, and each of them, generally owed Plaintiff and

Class Members a duty of reasonable care to avoid exposing Plaintiff and Class Members to reasonably foreseeable risk of harm or injury by acting reasonably under the circumstances complained of in this Complaint.

368.   All DEFENDANTS, and each of them, breached their duty of reasonable care, as complained of in this Complaint, by failing to act reasonably under the circumstances and exposing Plaintiff and Class Members to reasonably foreseeable risks of harm or injury.

369.   As a direct, legal, and proximate result of the aforementioned foreseeable conduct throughout this Complaint, Plaintiff and the Class have suffered and continue to suffer emotional pain and injury, all in an amount to be determined according to proof at trial.

370.   DEFENDANT OUSD is liable to Plaintiff and the Class for the acts of its employees, the individual DEFENDANTS herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of *respondeat superior*, codified at Ca. Gov. Code § 815.2, elsewhere and as set forth by precedent.

**ELEVENTH CLAIM FOR RELIEF**
**NEGLIGENT HIRING, SUPERVISION, and**
**RETENTION OF EMPLOYEE**
**(Plaintiff and the Class Against Defendant OUSD)**

371.   Plaintiff incorporates all paragraphs, as though fully set forth herein.

372.   Plaintiff brings this claim individually and on behalf of the Class.

CLASS ACTION COMPLAINT FOR DAMAGES

373.   DEFENDANT OUSD had a duty to provide clear and consistent policies and procedures regarding its disciplinary process, due process requirements, and nondiscrimination, including, but not limited to, the SSP and all other individually named DEFENDANTS.

374.   DEFENDANT OUSD had a duty to ensure that that its employees exercised their duties and responsibilities consistent with its written policies and procedures regarding discipline, due process requirements, and nondiscrimination, including, but not limited to, the SSP.

375.   DEFENDANT OUSD was negligent in its supervision of DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL MEMBERS and failed to ensure that they each exercised their duties and responsibilities within the bounds of policies and procedures established by the California legislature and the State Board of Education, as well as their own OUSD Board policies, and the state and federal statutes and constitutions.

376.   Plaintiff and the Class suffered damages and harm by DEFENDANT OUSD and its employees as a result of DEENDANT OUSD's Negligent hiring, supervision, and retention of DEFENDANTS GREG SMITH, DEFENDANT

NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL MEMBERS

377.    DEFENDANT OUSD's negligence in hiring, supervising, and retaining DEFENDANTS GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL MEMBERS proximately and substantially caused the Plaintiff's and the Class Members' foreseeable injuries.

## TWELFTH CLAIM FOR RELIEF
### CALIFORNIA CONSTITUTION, Cal Const. Art. I, § I
### (Right to Privacy)
### (Plaintiff Against All OUSD Defendants)

378.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

379.    This cause of action arises under the Constitution of the State of California, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

380.    Plaintiff has legally protected liberty and privacy interests. These interests necessarily extend to the facts, data, and information related to the

confidential disciplinary actions against T.L. by DEFENDANT OUSD and its employees.

381.  In addition to T.L.'s state constitutional privacy rights, in accordance with the Family Educational Rights and Privacy Act (FERPA) 20 U.S.C. § 1232G; 34 CFR Part 99, Plaintiff's education records, including disciplinary actions, are federally protected as private and confidential.

382.  Upon information and belief, after T.L. was forced to withdraw from Canyon High School, including during the pendency of his appeals, Female Student A and/or one or more female student DOE DEFENDANTS 4-50 falsely told other students that T.L. was expelled from Canyon High School because he was a "sexual harasser" and he "touched girls."

383.  Upon information and belief, after T.L. was forced to withdraw from Canyon High School, including during the pendency of his appeals, one or more unidentified counselors at Canyon High School falsely and erroneously disclosed to other uninvolved male students that T.L. was "kicked out" of Canyon High School because he "tried" to make out with other girls. Although this information was patently false, the counselor's status and position at the high school gave the imprimatur of truth and official information against T.L.  This school counselor disclosed private and confidential disciplinary information to other high school

students in violation of FERPA and other state constitution and laws.

## THIRTEENTH CLAIM FOR RELIEF
### VIOLATION OF CAL. CIV. CODE § 52.1 (Bane Act)
### (Plaintiff Against All OUSD Defendants)

384.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

385.    This cause of action arises under Cal Civ. Code §52.1, wherein

DEFENDANT OUSD, by and through its employees, interfered with the exercise

of Plaintiff's rights under federal and state statutes and constitutions by "threat,

intimidation, or coercion."

386.    As set forth throughout this Complaint, DEFENDANT OUSD, by

and through its employees, denied T.L. procedural and due process protections

throughout the disciplinary process, including through the use of threats,

intimidation, and coercion; retaliated against T.L. for exercising his due process

rights; and discriminated against T.L. on the basis of race, color, ethnicity and/or

sex.

## FOURTEENTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT
### (Plaintiff Against ALL OUSD Defendants)

387.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

388.    DEFENDANT OUSD, by and through DEFENDANT GREG

SMITH and DEFENDANT NORA ALVAREZ intentionally and unlawfully

restrained, detained, or confined T.L. for over two hours while they unlawfully

interrogated him, refused to allow him to leave, or to call his parents.

389.    DEFENDANT OUSD, by and through DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ forced T.L. to stay in DEFENDANT GREG SMITH's office for over two hours while being interrogated, threatened, and intimidated.

390.    T.L. did not believe he was free to leave, did not consent to his restraint, and believed he was prevented from leaving by DEFENDANT GREG SMITH and/or DEFENDANT NORA ALVAREZ at all times for over two hours on December 15, 2022.

391.    T.L. was taken out of his educational classes and held for over two-hours to be interrogated by DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ about, among other things, his interpersonal interactions with other female students for, at least, the previous four months.

392.    T.L. suffered damages as a result of the false imprisonment, including, but not limited to damage to reputation, false allegations, and mental abuse.

**FIFTEENTH CLAIM FOR RELIEF**
**VIOLATION OF CAL. ED. CODE § 220**
**(Plaintiff and the Class Against All OUSD Defendants)**

393.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

394.    Plaintiff brings this claim individually and on behalf of the Class.

CLASS ACTION COMPLAINT FOR DAMAGES

115

395.   This cause of action arises under Cal Ed. Code § 262.4, wherein DEFENDANT OUSD, by and through its employees, discriminated against Plaintiff and the Class Members on the basis of gender, race, and/or ethnicity in an educational program activity that receives, or benefits from, state financial assistance in violation of Cal. Ed. Code §220.

396.   As set forth throughout this Complaint, DEFENDANT OUSD, by and through its employees, denied T.L. and the Class Members procedural and due process protections throughout the disciplinary process; retaliated against T.L. for exercising his due process rights; and discriminated against T.L. and the Class Members on the basis of gender, race, and/or ethnicity.

397.   Plaintiff and the Class seek only injunctive relief with respect to this cause of action only.

### SIXTEENTH CLAIM FOR RELIEF
**CALIFORNIA PUBLIC RECORDS ACT**
**(Ca. Gov. Code, § 6259 *et seq.*)**
**(Plaintiff Against Defendant OUSD)**

398.   Plaintiff incorporates all paragraphs, as though fully set forth herein.

399.   DEFENDANT OUSD has improperly withheld public records Plaintiff requested and are entitled to under Ca. Gov. Code §6259.

400.   DEFENDANT OUSD has made piecemeal productions and engaged in serial delays responding to Plaintiff's requests since January 2023, and of the

date of this Complaint, continues to delay timely and complete production. Specifically, DEFENDANT OUSD has not provided complete responses to Plaintiff's numerous requests for:

a. All documents, e-mails, text messages, chat messages, instant messages, audio recordings, video recordings, photographs, drawings, notes, and drafts (hereinafter collectively referred to as "documents") related to the disciplinary action taken against T.L. on or about December 16, 2022, by Canyon High School, including the Student Success Panel, and/or OUSD, including, but not limited to:

    i. All documents related to the report, investigation, findings, and determination related to the facts and evidence surrounding the incidents subject to the OUSD disciplinary action against T.L. dated December 16, 2022. These documents include, but are not limited to:

        1. All written statements for any involved students;

        2. All documents from any involved students;

        3. All documents, emails, or statements from any involved students' parents;

        4. All text messages from any involved students;

5. All audio recordings from any involved students;

6. All video recordings from any involved students;

7. All audio recordings of students' interrogations or interviews, including metadata regarding deletion, whether on the personal or business cell phones of DEFENDANT GREG SMITH and/or DEFENDANT NORA ALVAREZ;

8. All notes from any involved teachers or administrators, including, but not limited to, DEFENDANT GREG SMITH and/or DEFENDANT NORA ALVAREZ;

9. All documents to or from DEFENDANT GREG SMITH and/or DEFENDANT NORA ALVAREZ;

10. All e-mails and messages to or from DEFENDANT GREG SMITH and/or DEFENDANT NORA ALVAREZ; and

11. All videos from Canyon High School security cameras (including retention policy).

ii. The Student Success Panel related to T.L. on or about January 11, 2023;

iii.   All documents and records related to the investigation, findings, disciplinary actions, settlements, and educational code violations involving sexual assaults, alleged sexual assault, and/or distribution of child pornography allegations at Canyon High School for the past five (5) years including, but not limited to, Student 2.

iv.   All documents and records related to the investigation, findings, disciplinary actions, settlements, and educational code violations involving the false allegations from Student D and the distribution of nude pictures at Canyon High School.

v.   All documents and records related to the investigation, findings, and disciplinary actions related to Student 3, a male student who had threatened to kill students and had written a "hit list," naming various students, including T.L.

vi.   All documents and records related to Educ. Code Section 48900.2 "sexual harassment" violations for any and all other students at: Canyon High School; and all other schools within Orange Unified School District.

vii.   All documents and records related to Student Success Panel for

viii.  all Educ. Code Section 48900.2 "sexual harassment" violations for any and all other students at: Canyon High School; and All other schools within Orange Unified School District.

b.  Undersigned counsel specifically requested the status of specific SSP data on April 18, 2023, in accordance with the multiple PRA requests, and received incomplete and limited data.

401.  DEFENDANT OUSD has failed to produce to Plaintiff complete and timely disclosure of certain public records related to the Plaintiff's PRA request involving the OUSD's policies, practices, customs, and data related to its disciplinary process, including, but not limited to the SSP and the appeal process, as well as the specific data and information related to T.L.'s disciplinary process.

402.  DEFENDANT OUSD has improperly withheld and delayed production and completion of its obligations under the PRA, in violation of Ca. Gov. Code, §6253(c).

403.  To date, Plaintiff remains unclear on the complete production of responsive documents to Plaintiff's PRA, DEFENDANT OUSD is improperly withholding documents related to its policies, practices, customs, and data related to its disciplinary process, including, but not limited to the SSP and the appeal process, as well as the specific data and information related to T.L.'s disciplinary

process. As a result of DEFENDANT OUSD's improper violations under the PRA, Plaintiff is prevented from providing additional factual support for his allegations, including allegations related to DEFENDANT OUSD's *Monell* and *City of Canton* and *Larez* liability.

## SEVENTEENTH CLAIM FOR RELIEF
### DEFAMATION
**(Plaintiff Against All OUSD Defendants and DOE DEFENDANTS 4-50)**

404.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

405.    DEFENDANT OUSD, by and through its employees, including, but not limited to DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, DEFENDANT SSP PANEL MEMBERS, unidentified Canyon High School counselors, STUDENT A, and other unidentified DOE DEFENDANTS 4-50, intentionally made or otherwise made false publication that T.L. was "kicked out," "expelled," or otherwise excluded from Canyon High School because he was a "sexual harasser," engaged in "sexual assault," and/or "touched girls."

406.    DEFENDANT OUSD, DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and

DEFENDANT SSP PANEL MEMBERS made a determination and false publication that T.L. engaged in sexual harassment, without any basis in fact or law that T.L.'s actions met the definitions of state education code and law.

407.    DEFENDANT OUSD, DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, and DEFENDANT CRAIG ABERCROMBIE made a determination and false publication to refer T.L. to SSP because his offense was "beyond that of a standard suspension," absent any policies or procedures, and without any written findings, factual support, or basis in fact or law.

408.    DEFENDANT OUSD, DEFENDANT GREG SMITH, DEFENDANT NORA ALVAREZ, DEFENDANT CRAIG ABERCROMBIE, DEFENDANT HERIBERTO ANGEL, DEFENDANT DAVID RIVERA, and DEFENDANT SSP PANEL MEMBERS made a determination and false publication that he should be involuntarily placed at another school absent any policies or procedures, and without any written findings, factual support, or basis in fact or law.

409.    DEFENDANT OUSD and DEFENDANT DAVID RIVERA retaliated against Plaintiff T.L. for exercising his appeal rights by making a false publication that his second appeal findings are based on findings that had never

been made anywhere in the record on appeal: 1) that T.L.'s "presence" at Canyon High School constituted a "continuing danger to Canyon's students"; 2) that T.L. engaged in "forcible attempts to kiss and touch the intimate parts of at least six Canyon High School students during the school day"; and 3) that T.L. admitted to engaging in the alleged conduct toward five students. Each of these statements are patently false, unsupported in the record, and/or contrary to the record. DEFENDANT DAVID RIVERA knowingly and intentionally made these false statements in retaliation for T.L.'s exercise of his appeal rights. DEFENDANT DAVID RIVERA made these false publications with a reckless disregard for the truth.

410.    An unidentified counselor at Canyon High School made a number of false publications to other male high school students, if not others, that T.L. was "kicked out of Canyon High School" for "sexually harassing" female students. Upon information and belief, this unidentified counselor was not involved in the disciplinary process, does not know the facts and circumstances related to the allegations, and, at a minimum, even if he is aware of T.L.'s disciplinary record, should not have made false publications to uninvolved parties.

411.    Student A, and/or other female fourteen-year-old DOE DEFENDANTS, 4-50, also made statements to other students that T.L. was "expelled" or was "kicked out" of Canyon High School because he was a "sexual

harasser," "sexually assaulted" females, and/or "touched girls." These statements were made in a manner that is damaging on its face.

412.    These false publications caused Plaintiff T.L. to suffer emotional distress, pain and suffering, reputational damage, and other special damages.

413.    One or more of these false publications constitute defamation *per se.*

414.    One or more of these false publications constitute defamation *per quod.*

415.    One or more of these false publications about T.L. were made negligently and without a reasonable basis for determining whether the statements were true or not.

## EIGHTEENTH CLAIM FOR RELIEF
### NON-CONSENSUAL TAPING (Ca. Pen. Code, § 637.2)
### (Plaintiff Against DOE Defendants 4-50)

416.    Plaintiff incorporates all paragraphs, as though fully set forth herein.

417.    DOE DEFENDANT 4, one of the Female Students outlined above, recorded her interaction with Plaintiff T.L. without consent or authorization from T.L.  Upon information and belief this was Female Student A.

418.    T.L. did not consent to this recording.

419.    DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ informed T.L. and his parents that they had obtained a copy of a recording but refused to produce it to Plaintiff T.L. or his parents or disclose the

CLASS ACTION COMPLAINT FOR DAMAGES

involved student's identity.

420.   Upon information and belief, this unlawfully obtained recording would have provided credibility evidence, at a minimum, related to the parties to the recording, including Plaintiff T.L.'s denial that he had engaged in any wrongdoing rising to the level of the allegations against him.

421.   On or about January 9, 2023, DEFENDANT GREG SMITH and DEFENDANT NORA ALVAREZ admitted that the recording was in violation of state two-party consent requirements and, therefore, would not produce it T.L. or his parents, notwithstanding their requests for a copy.

422.   Upon information and belief, there was no disciplinary investigation and/or criminal referral of the female fourteen-year-old for the recording in violation of the State's criminal laws.

423.   The allegations related to this cause of action also support the allegations above related to the Ninth Claim for Relief above, Conspiracy to Violate Civil Rights.

## VIII.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief from Defendants:

(i)      Certify the proposed Class pursuant to the Federal Rules of Civil

Procedure Rule 23(a), (b)(2), (b)(3), and/or (c)(4);

(ii)     Designate Plaintiff as a representative of the proposed Class;

(iii)    Award compensatory damages, including general and special damages, according to proof;

(iv)    Award punitive damages pursuant to 42 U.S.C. §1983 and California Civil Code § 3204, 52.1(b), and Ca. Pen. Code §502(e)(4), and any other applicable laws or statutes, in an amount sufficient to deter and make an example of each Defendant;

(v)     Award exemplary damages in accordance with Ca. Civ. Code, §1798.53, and any other applicable provisions;

(vi)    Award statutory damages, according to proof;

(vii)   Award prejudgment interest according to proof;

(viii)  Award reasonable attorney fees pursuant to 42 U.S.C. §1983, 1988; California Civil Code §§ 52.1, 52(b)(3); California Code of Civil Procedure 1025.1, Ca. Pen. Code §502(e)(2), Ca. Gov. Code, §6259(d), and Ca. Civ. Code, §1798.45-1798.48, and any other applicable provisions;

(ix)    Award costs of suit and litigation;

(x)     Award injunctive relief, including but not limited to expunging from Plaintiff's and the Class Members' educational records

reference to any unconstitutionally-imposed discipline; and

(xi)    Award such further relief which is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the proposed Class, respectfully requests a trial by jury as to all matters so triable.

This 19th day of June, 2023.        By:   /s/ Je Yon Jung

Je Yon Jung, Esq. (SBN #329774)
jeyon@mayjung.com
Jessica H. Meeder, Esq. (*pro hac vice*
  forthcoming)
jessica@mayjung.com
**MAY JUNG LLP**
333 City Blvd. West
Suite 327
Orange, CA 92868
Tel: (818) 869-6476
Fax: (202) 618-8282

Benjamin L. Crump (*pro hac vice*
  forthcoming)
ben@bencrump.com
**BEN CRUMP LAW, PLLC**
122 S Calhoun St.
Tallahassee, FL 32301
Tel: 800-683-5111
Fax: 800-770-3444

*Attorneys for Plaintiff and the Putative
Class*

CLASS ACTION COMPLAINT FOR DAMAGES